(No. 25995.—

ANTHONY KOBERLEIN *et al.* Appellants, *vs.* THE FIRST NATIONAL BANK OF ST. ELMO *et al.* Appellees.

*Opinion filed April 10, 1941—Rehearing denied June 4, 1941.*

. Smith, J., took no part.

Edward G. Woods, and Robert G. Burnside, for appellants.

Will P. Welker, W. F. Sonnemann, W. F. Schuermeyer, and Rogers, Stephenson & Dickason, for appellees.

Mr. Justice Farthing delivered the opinion of the court:

On July 14, 1939, Anthony Koberlein and Lucy Koberlein, his wife, filed their complaint in equity in the circuit court of Fayette county against the First National Bank of St. Elmo, J. C. Good, C. R. Bennett, J. E. Mabee, and others, and prayed that a decree of foreclosure and sale rendered by that court on June 20, 1934, in favor of the First National Bank of St. Elmo and against T. B. Taylor, Alice Taylor, the Koberleins, and others, be set aside, and that the Koberleins be adjudged owners of the premises involved in that proceeding. This complaint was dismissed on August 9, 1940, for want of equity, and the Koberleins have appealed directly to this court from that decree because a freehold is involved.

Anthony Koberlein purchased the propery in dispute from T. B. Taylor and Alice Taylor on February 27, 1924, subject to a mortgage of $1500 in favor of the First National Bank of St. Elmo. The Koberleins immediately took

possession of and farmed the property. On March 2, 1934, the bank filed a complaint in the circuit court of Fayette county to foreclose the above mortgage and made the Taylors, Koberleins, and the second mortgagees, defendants. The complaint in the instant suit alleges that process was not prayed for and summons was not issued in the foreclosure suit, and the bank admitted this in its answer. The attorneys for the bank filed appearances for all the defendants, including the Koberleins, with the clerk on May 16, 1934. The appearance of the Koberleins, which purported to be signed by both of them, was as follows: "And now comes Anthony Koberlein and Lucy Koberlein, defendants in above entitled cause, and each in writing enter their full and unlimited appearance as defendants in and to said cause, and waive service of summons upon them and each of them, and consent that the court may take and have jurisdiction of their persons as defendants in said cause, and that any and all orders and decrees may be had and entered in said cause as fully and with the same force and effect as if said defendants, and each of them, had been duly and regularly served with process of summons herein." The complaint alleges this appearance was not in fact signed by Mrs. Koberlein or by any one authorized to sign for her and the evidence on this point is conflicting. On the same day that the above appearance was filed, and without notice, according to the Koberleins, the defendants were defaulted for failing to answer and the cause was referred to a master to take and report the evidence. On June 9, 1934, the master made his report and stated he had given notice to all parties that testimony would be taken on June 5, 1934, at his office, that the testimony was taken at that time and place and that he found that $100 was a reasonable attorney's fee for the foreclosure, and that there was then due as principal and interest $1579.91. On June 20, 1934, the circuit court entered a decree of foreclosure which recited that the defendants had entered their appearances,

that the court had jurisdiction of the subject matter and of all the defendants, that the defendants had failed to plead, were defaulted, and the complaint taken as confessed, that the master's report was approved, that there was due plaintiff $1579.91 which was ordered paid, and that in default of payment thereof the mortgaged property should be sold. Payment was not made and the master sold the land on July 28, 1934, to the First National Bank of St. Elmo for the sum of $1555.23, which left a deficiency of $200. The Koberleins alleged they were not given notice of this sale. The bank received a master's certificate of sale and, later, a master's deed. The bank allowed the Koberleins to remain in possession of the property and collected crop rent for the years 1935, 1936 and 1937. In her testimony Mrs. Koberlein admitted she had knowledge in the fall of 1935 that the foreclosure had been accomplished, and that she did nothing about it until this suit was filed.

On August 26, 1936, the bank made an oil lease to the defendant J. C. Good, who was acting for the defendant Bennett. Bennett assigned the rights he obtained by this lease to J. E. Mabee but retained an overriding interest. On the same day the above lease was executed, the bank executed a mineral deed to Bennett for a one-half interest in the oil and gas royalty reserved to the bank by the above lease. These instruments were recorded. Mabee drilled eight wells on the land at a cost of $118,567.88. The Koberleins admit they had knowledge of the oil development from the time it started, and that they did not at that time contend that the land was theirs or that the foreclosure proceedings were void. On the contrary, they admitted to the representatives of the lessee that the bank was their landlord. As stated above, the Koberleins filed this suit on July 14, 1939, and prayed that they be adjudged owners of the premises in dispute and entitled to the possession thereof; that the foreclosure decree rendered on June 20, 1934, be set aside and declared to be null and void; that

the defendants be required to account strictly for all money, profits, or benefits derived from the use of said land or from said lease; that the master's deed be declared null and void, and for other relief. The chancellor found the general appearance entered in the foreclosure proceeding in fact was signed by Lucy Koberlein, and this finding is sustained. He dismissed the complaint for want of equity and this appeal followed.

The Koberleins contend that regardless of the entry of appearance, the circuit court did not acquire jurisdiction of the foreclosure suit because they say section 5 of the Civil Practice act (Ill. Rev. Stat. 1935, chap. 110, par. 129) then contained a mandatory requirement that summons be issued at the time any civil suit was instituted. At that time, the section provided: "Every civil action, unless otherwise expressly provided by statute shall be commenced by the issuance of a summons. The clerk shall issue summons upon request of the plaintiff." The contention is that without a summons issuing, the court could not acquire jurisdiction of the foreclosure suit. We perceive no reason for such a construction, for it would require the doing of a useless act in a case where a complaint is filed and the defendants enter their written appearance. The more reasonable construction is that the legislature intended a summons to issue only when it was to be used to acquire jurisdiction of the defendants. In addition, section 4 of the Civil Practice act then, as now, provided: "This act shall be liberally construed, to the end that controversies may be speedily and finally determined according to the substantive rights of the parties, and the rule that statutes in derogation of the common law must be strictly construed shall not apply to this act or to the rules made pursuant thereto." We hold that it was not necessary to issue a summons where a complaint and entry of appearance were filed.

Although the complaint of the Koberleins prays that the foreclosure decree be set aside and that the master's deed

be removed as a cloud upon their title, it is apparent from the allegations of the complaint that its sole object is to obtain a review of the foreclosure proceedings and that it is a bill amounting to a bill of review. (*Knaus* v. *Chicago Title and Trust Co.* 365 Ill. 588.) Such a suit may be brought as a matter of right without leave of court and may be based upon fraud in fact or fraud in law. (*Griggs* v. *Gear,* 3 Gilm. 2.) For example, it will lie where a court does not acquire jurisdiction of a defendant either by personal or constructive service, and his appearance had not been entered either personally or by someone authorized, and where no pleadings were filed in his behalf by his authority. (*Elieff* v. *Lincoln Nat. Life Ins. Co.* 369 Ill. 408.) It is the contention of the Koberleins that Mrs. Koberlein was not served with summons and did not sign the entry of appearance, and that she was therefore entitled to maintain this suit. Even if this were true still a bill amounting to a bill of review can ordinarily be brought only within the time allowed for perfecting an appeal or writ of error, which, under the Civil Practice act, is one year. (*Knaus* v. *Chicago Title and Trust Co. supra; Sloan* v. *Sloan,* 102 Ill. 581, 584.) In the *Sloan case,* a bill in the nature of a bill of review was brought to set aside a divorce decree. The complainant alleged that a divorce suit was instituted in her name but without her authority some seven years before, and that she was granted a divorce in that suit. She also alleged that she did not have knowledge of the divorce decree until about one month before she filed the bill, and therefore, was not able to file it sooner. This court there said: "It is a general rule that a bill of review will not be entertained, unless brought within the time allowed by statute for the suing out of a writ of error. In this case about seven years intervened after the entering of the decree of divorce before the filing of this bill. In the absence of some cogent reason to the contrary, this proceeding must be regarded as barred by mere lapse of time.

The allegation of the utter ignorance of the proceedings cannot in such case prevail, unless clearly and satisfactorily proven." The evidence was then discussed and it was pointed out that it was conflicting, the complainant being sure that she did not have knowledge of the divorce decree until shortly before the bill was filed, while other witnesses were equally positive she did have this knowledge. We held that cause for disregarding the general rule that the bill must be filed within the time allowed for suing out a writ of error was not so clearly established by proof as to authorize the court to depart from it, and the dismissal of the bill was affirmed. In the instant case, Mrs. Koberlein admitted she knew of the foreclosure proceeding in the fall of 1935, and Anthony Koberlein had knowledge of it at the same time. Accepting their testimony as true, they waited almost four years after they knew about the foreclosure decree before they filed the instant suit. During these four years large sums of money were expended in the development of the property involved in the foreclosure, and according to their own testimony they had knowledge of this expenditure. No excuse is offered for their failure to file the bill within a reasonable time after they had knowledge of the foreclosure decree. Consequently, the defense of *laches* raised in the answers of the defendants must be sustained. The Koberleins cite *Thayer* v. *Village of Downers Grove,* 369 Ill. 334, *Elieff* v. *Lincoln Nat. Life Ins. Co. supra, Ayer* v. *City of Chicago,* 149 Ill. 262, and *Dickey* v. *City of Chicago,* 152 id. 468, for the proposition that the doctrine of *laches* does not apply where there is an attack on a void judgment. Only one of those cases, the *Elieff case,* involved a bill in the nature of a bill of review, and it is the only one in point here. In that case we pointed out that the petition for leave to file the bill was filed within thirty days after the complainant learned of the entry of the foreclosure decree against him, and consequently he was not guilty of *laches.* We did not hold that the de-

fense of *laches* would never lie. The *Sloan case, supra,* is authority for the proposition that it will.

It is unnecessary to consider the other points raised by the appellants. The decree of the circuit court dismissing the complaint for want of equity is affirmed.

*Decree affirmed.*

Mr. JUSTICE SMITH took no part in this decision.