**2022 IL 126606**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 126606)

PNC BANK, NATIONAL ASSOCIATION, Appellee, v.
JERZY KUSMIERZ *et al*., Appellants (Brian T. Heath *et al*., Appellees).

*Opinion filed January 21, 2022.*

CHIEF JUSTICE ANNE M. BURKE delivered the judgment of the court, with opinion.

Justices Garman, Theis, Neville, Michael J. Burke, Overstreet, and Carter concurred in the judgment and opinion.

**OPINION**

¶ 1      This case concerns whether a petition for relief from a void judgment filed under section 2-1401(f) of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401(f) (West 2016)) is subject to dismissal based on *laches*. The circuit court of Du Page County dismissed the petition at issue, applying both *laches* and the

*bona fide* purchaser protections set forth in section 2-1401(e) of the Code (*id.* § 2-1401(e)). The appellate court affirmed. 2020 IL App (2d) 190521. For the reasons that follow, we affirm the appellate court's judgment.

¶ 2                                    BACKGROUND

¶ 3        On March 30, 2011, plaintiff, PNC Bank, National Association (PNC), filed a foreclosure complaint in the circuit court of Du Page County against defendants, Jerzy and Halina Kusmierz. The complaint sought foreclosure of the real property commonly known as 1405 Wisconsin Avenue, Lombard, Illinois, 60148. PNC retained Metro Detective Agency, LLC (Metro), to serve the summons. On March 31, 2011, Jennifer I. Magida, a Metro employee, attempted to serve defendants at the subject address but discovered that the property consisted of a vacant lot. On April 1, Magida served both defendants at the property commonly known as 1107 West Eaton Court, Palatine, Illinois, 60067. Three days later, on April 4, PNC filed a motion in the trial court requesting appointment of a special process server. The court granted the motion on the same day and entered an order appointing Metro as special process server. On April 7, PNC filed affidavits of service with the clerk of the court showing that Magida served defendants with summons on April 1 at the Palatine address.

¶ 4        Defendants failed to appear in court to defend the action. On February 27, 2012, PNC moved for an order of default against defendants and a judgment of foreclosure and sale. On February 28, 2012, the trial court granted the motions and entered the requested orders. PNC complied with all statutory notice requirements, and the property was sold at a judicial sale back to PNC. On June 12, 2012, the court confirmed the judicial sale of the property. Notices of the foregoing proceedings were mailed to defendants at the Palatine address. In 2013, Nellisa S. Ragland and Brian T. Heath purchased the property from PNC for $24,000 and constructed a single-family home on the property, financing the construction with $42,000 in personal funds and two mortgage loans totaling $292,650.

¶ 5        On September 12, 2018, more than seven years after being served with the foreclosure complaint and summons, defendants filed a petition for relief from void judgments pursuant to section 2-1401(f) of the Code (735 ILCS 5/2-1401(f) (West 2016)). The petition alleged that the orders entered against defendants were void

*ab initio* because the trial court lacked personal jurisdiction over them. Defendants claimed that they were never properly served because the process server was not appointed by the court at the time of service, in violation of section 2-202(a) of the Code. See *id.* § 2-202(a) (requiring a private detective to be specially appointed by the court before serving process in Cook County). In their prayer for relief, defendants requested that the court quash service, vacate all orders entered against them, find that defendants are the owners of the property, restore possession of the property to them, and order PNC and the current owners to pay monetary restitution for use and occupancy and profits derived from the property from June 12, 2012, to the present.

¶ 6        Third-party respondents, Ragland and Heath, filed a combined motion to dismiss the petition pursuant to section 2-619.1 (*id.* § 2-619.1). They contended that they were entitled to the protections afforded to *bona fide* purchasers under section 2-1401(e) (*id.* § 2-1401(e)) because they were unaware of the alleged jurisdictional defect and such defect was not apparent on the face of the record. They also contended that the petition was barred by *laches* and requested improper relief. In their supporting affidavits, respondents attested that, from 2013 to the present, they paid at least $29,500 in property taxes and $6500 in insurance coverage, in addition to the personal funds and mortgage loans they used to purchase the property and construct their home. Their mortgagee, Mortgage Electronic Registration Systems, Inc., as nominee for STC Capital Bank, was given leave by the court to join respondents' motion. PNC subsequently filed its own section 2-619.1 combined dismissal motion, arguing that defendants' section 2-1401 petition was barred by *laches*, was moot, and requested improper relief.

¶ 7        On May 21, 2019, the trial court entered an order granting the dismissal motions and dismissing the petition with prejudice. Among other things, the trial court held that defendants' petition was barred by *laches* as to both PNC and third-party respondents. The appellate court affirmed the judgment of dismissal. 2020 IL App (2d) 190521. The court concluded that third-party respondents were entitled to the statutory protections for *bona fide* purchasers under section 2-1401(e) because the alleged defect in service was not apparent on the face of the record. *Id.* ¶¶ 24-27 (citing 735 ILCS 5/2-1401(e) (West 2018)). The court also held that defendants' petition, as applied to PNC, was barred by *laches*. *Id.* ¶¶ 28-34. The court held that *laches* may preclude a party from obtaining relief where the other party has suffered

prejudice from the unreasonable delay, even where the judgment being challenged is void. *Id.*

¶ 8      This court allowed defendants' petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Oct. 1, 2019). We also allowed the Illinois Land Title Association and the Illinois Mortgage Bankers Association to file *amicus curiae* briefs in support of PNC's position. Ill. S. Ct. R. 345 (eff. Sept. 20, 2010).

¶ 9                                ANALYSIS

¶ 10      On appeal to this court, defendants argue that the dismissal of their petition was improper because (1) third-party respondents do not qualify as *bona fide* purchasers under section 2-1401(e) and (2) *laches* does not apply to a petition challenging a judgment as void. The issues raised in this appeal require this court to review the dismissal of a petition pursuant to section 2-619(a)(9). 735 ILCS 5/2-619(a)(9) (West 2016). A motion to dismiss filed under this section admits the legal sufficiency of the complaint but raises an affirmative defense or other matter that avoids the legal effect of or defeats the claim. *Id.*; *Rehfield v. Diocese of Joliet*, 2021 IL 125656, ¶ 21. Our review of the trial court's dismissal of defendants' petition under section 2-619 is *de novo*. *Rehfield*, 2021 IL 125656, ¶ 23. We also review *de novo* the dismissal of a section 2-1401 petition. *People v. Carter*, 2015 IL 117709, ¶ 13.

¶ 11      In their petition, defendants contend the orders entered against them in the foreclosure action were void because service was defective and, thus, the trial court never obtained personal jurisdiction over them. Defendants' claim is based on a violation of section 2-202(a), which provides that a private process server cannot serve process on a defendant in Cook County without first being appointed by the circuit court. 735 ILCS 5/2-202(a) (West 2016). Since the court did not specially appoint Magida until three days after service took place, defendants allege that service was defective, rendering the resulting judgments void.

¶ 12      This court recently addressed section 2-202(a) in *Municipal Trust & Savings Bank v. Moriarty*, 2021 IL 126290. In that case, we held that section 2-202(a) requires strict compliance where the case originates in a county outside Cook County but the defendant is served in Cook County. *Id.* ¶¶ 21, 23. We thus held that

- 4 -

service of a defendant in Cook County by a process server who was not specially appointed to do so was defective, even though the case was filed in Kankakee County. *Id.* ¶ 23. In so holding, we reiterated the following well-established principles governing personal jurisdiction:

> "A judgment entered by a court that lacks jurisdiction over the parties is void and may be challenged at any time, either directly or collaterally. [Citation.] Personal jurisdiction may be established either by service of process in accordance with statutory requirements or by a party's voluntary submission to the court's jurisdiction. [Citation.] A judgment rendered without voluntary submission or service of process in strict statutory compliance is void regardless of whether the defendant had actual knowledge of the proceedings. [Citation.]" *Id.* ¶ 17.

¶ 13    Plaintiffs do not dispute that a void judgment is not subject to ordinary time limits and may be challenged at any time. Plaintiffs contend, however, that defendants do not have a right to relief here based on the *bona fide* purchaser protections set forth in section 2-1401(e) of the Code and the equitable doctrine of *laches*. We address each in turn.

¶ 14                                   I. Section 2-1401(e)

¶ 15    Section 2-1401 allows a party to seek relief from a final judgment, including a default judgment, by filing a petition more than 30 days after judgment is entered. See *Sarkissian v. Chicago Board of Education*, 201 Ill. 2d 95, 101-02 (2002); 735 ILCS 5/2-1401(a) (West 2016). Proceedings under section 2-1401, though filed in the same case in which the judgment was entered, are considered an independent and separate action and not a continuation of the underlying litigation. *Warren County Soil & Water Conservation District v. Walters*, 2015 IL 117783, ¶ 31. Generally, petitions filed under this section must be filed within two years after entry of the judgment and allege the following: (1) due diligence in presenting the defense or claim, (2) due diligence in filing the petition, and (3) a meritorious defense. *Smith v. Airoom, Inc.*, 114 Ill. 2d 209, 220-21 (1986). However, a party who files a petition for relief under section 2-1401(f) on the ground that the judgment is void need not comply with these procedural requirements. *Sarkissian*, 201 Ill. 2d at 104; 735 ILCS 5/2-1401(f) (West 2016) ("Nothing contained in this

Section affects any existing right to relief from a void order or judgment, or to employ any existing method to procure that relief."). Thus, petitions based on voidness grounds may be filed outside the two-year limitations period and need not allege a meritorious defense and due diligence. *Sarkissian*, 201 Ill. 2d at 104.

¶ 16　　Even if a judgment is void for lack of jurisdiction, however, a petitioner may be precluded from obtaining relief from a third-party purchaser pursuant to section 2-1401(e). *In re Application of the County Collector*, 397 Ill. App. 3d 535, 549 (2009). Section 2-1401(e) states as follows:

> "Unless lack of jurisdiction affirmatively appears from the record proper, the vacation or modification of an order or judgment pursuant to the provisions of this Section does not affect the right, title or interest in or to any real or personal property of any person, not a party to the original action, acquired for value after the entry of the order or judgment but before the filing of the petition, nor affect any right of any person not a party to the original action under any certificate of sale issued before the filing of the petition, pursuant to a sale based on the order or judgment." 735 ILCS 5/2-1401(e) (West 2016).

¶ 17　　Section 2-1401(e) protects a *bona fide* purchaser's interest in property where the defect in service is not apparent from the record and the purchaser was not a party to the original action but acquired title before the filing of the petition. *U.S. Bank National Ass'n v. Rahman*, 2016 IL App (2d) 150040, ¶ 26 (citing *Christiansen v. Saylor*, 297 Ill. App. 3d 719, 724 (1998), and *City of Rockford v. Lemar*, 157 Ill. App. 3d 350, 352-53 (1987)). Thus, where the rights of innocent third-party purchasers have attached, a petitioner challenging a judgment as void can obtain relief only where the alleged personal jurisdictional defect affirmatively appears in the record. *JPMorgan Chase Bank, N.A. v. Robinson*, 2020 IL App (2d) 190275, ¶ 22. In determining whether a lack of jurisdiction affirmatively appears in the record, we must look at the whole record, including the pleadings, the return on the process, and the judgment of the trial court. *State Bank of Lake Zurich v. Thill*, 113 Ill. 2d 294, 313 (1986); *Rahman*, 2016 IL App (2d) 150040, ¶ 27. A lack of personal jurisdiction is apparent from the record when it does not require inquiry beyond the face of the record. *Thill*, 113 Ill. 2d at 314.

¶ 18　　The appellate court below examined the record in this case and found nothing on the face of the record to indicate that defendants were served in Cook County or

that the special process server was required to be appointed by the court. 2020 IL App (2d) 190521, ¶ 27. The appellate court thus held that "a third-party purchaser would not, on the record alone, have any reason to suspect that service was not in compliance with section 2-202(a)." *Id.* Accordingly, "[b]ecause the jurisdictional defect [did] not affirmatively appear on the face of the record, section 2-1401(e) protect[ed] the purchasers' rights in the property." *Id.* We agree with the appellate court.

¶ 19       The record contains two affidavits by Magida, both dated April 5, 2011. The first affidavit states that on April 1, 2011, Magida served Jerzy Kusmierz by abode service when she handed the complaint and summons to his wife, Halina, at 1107 West Eaton Court, Palatine, IL, 60067. According to the affidavit, on April 4, 2011, Magida mailed the summons to Jerzy Kusmierz at his usual place of abode. The second affidavit states that Magida effected personal service of Halina on April 1, 2011, at the Palatine address. Both affidavits attest: "I am a registered employee of a Private Detective Agency licensed by the Illinois Department of Financial and Professional Regulation and thereby authorized to serve process within the State of Illinois pursuant to 735 ILCS 5/2-202(a)." The returns of service state the zip code of the service address to be 60067 but do not state the county in which service was made.

¶ 20       Defendants argue that respondents had constructive notice of the jurisdictional defect because the trial court's order appointing Metro as special process server was dated April 4, 2011, three days after service took place. According to defendants, the appointment order combined with the proof of service in the record should have put respondents on notice that service of process failed to comply with section 2-202(a). In support of this argument, defendants cite *C.T.A.S.S. & U. Federal Credit Union v. Johnson*, 383 Ill. App. 3d 909 (2008). In *Johnson*, the plaintiff credit union filed a complaint in Cook County against the defendant to recover on a defaulted loan. *Id.* at 910. The record showed that the process server served the defendant 11 days before being appointed by the court. *Id.* After the plaintiff obtained a default judgment and the property was sold at a sheriff's sale, the defendant promptly filed emergency motions to quash service and vacate the judgments. *Id.* The trial court granted the motions, and the appellate court affirmed. *Id.* The court held the trial court lacked personal jurisdiction over the defendant because service of process was made before the special process server was

appointed. *Id.* at 910-12. Furthermore, the court rejected the third-party purchaser's invocation of section 2-1401(e), finding that the jurisdictional defect was apparent from the record. *Id.* at 912-13. The court held: "The record here shows that the special process server served process before being appointed to do so. This was sufficient to notify [the third-party purchaser] of a potential jurisdictional defect." *Id.* at 913.

¶ 21    *Johnson* is easily distinguished from the case at bar. The underlying action in *Johnson* was filed in Cook County, and no question was raised concerning the fact that service took place in Cook County. Thus, the purchasers should have known that the special process server was statutorily required to be court-appointed before serving process. By contrast, the underlying action in this case was filed in Du Page County, and the record does not specify in which county service was made. If service was made in Du Page County or any other county outside Cook, section 2-202(a) does not require court appointment of a special process server. See 735 ILCS 5/2-202(a) (West 2016); *Moriarty*, 2021 IL 126290, ¶ 21. Accordingly, the court's order appointing Metro as special process server, standing alone, does not show a jurisdictional defect because there is nothing in the record to indicate that the process server was required to be appointed by the court for service to be effective.

¶ 22    We find nothing on the face of the record that affirmatively demonstrates that service took place in Cook County, requiring the special process server to be appointed by the court. Determining in which county the service address was located requires us to review materials beyond the face of the record, which we may not do. See *Thill*, 113 Ill. 2d at 314; see also *Robinson*, 2020 IL App (2d) 190275, ¶¶ 25-26 (defendant's citation of a map outside the record defeated defendant's argument that record affirmatively showed service took place in Cook County); *BankUnited, National Ass'n v. Giusti*, 2020 IL App (2d) 190522, ¶ 32 (where service affidavit failed to indicate whether defendant was served in Cook or Du Page County, affidavit did not establish a jurisdictional defect on its face); *Rahman*, 2016 IL App (2d) 150040, ¶ 39 ("[I]t was impossible to determine in which county service occurred from the face of the affidavits—outside materials were necessary.").

¶ 23    We find that the jurisdictional defect complained of by defendants does not affirmatively appear on the face of the record. We hold, therefore, that section 2-

1401(e) protects third-party respondents' rights in the property despite the alleged jurisdictional defect. See *Rahman*, 2016 IL App (2d) 150040, ¶ 42. This holding applies equally to the purchasers' mortgagee, Mortgage Electronic Registration Systems, Inc., who is entitled to *bona fide* purchaser status and the protections provided by section 2-1401(e). See *Robinson*, 2020 IL App (2d) 190275, ¶ 28 ("A mortgage of realty is afforded the same protections as a *bona fide* purchaser if the mortgage is supported by consideration and secured in good faith, without knowledge or notice of adverse claims."); *US Bank National Ass'n v. Villasenor*, 2012 IL App (1st) 120061, ¶ 58 ("The law measures *bona fide* purchasers and mortgagees under the same standards."). Therefore, the trial court did not err in dismissing defendants' petition with respect to third-party respondents.

¶ 24                                   II. *Laches*

¶ 25        The trial court held that *laches* precludes defendants from obtaining relief in this case. *Laches* is an equitable principle that bars relief for a litigant whose unreasonable delay in bringing an action has prejudiced the other party. *Richter v. Prairie Farms Dairy, Inc.*, 2016 IL 119518, ¶ 51. "The doctrine is grounded in the equitable notion that courts are reluctant to come to the aid of a party who has knowingly slept on his rights to the detriment of the opposing party." *Tully v. State*, 143 Ill. 2d 425, 432 (1991). Unlike a statute of limitations, *laches* concerns more than the mere passage of time. *Richter*, 2016 IL 119518, ¶ 51. Rather, *laches* is "principally a question of the inequity of permitting the claim to be enforced, an inequity founded upon some change in the condition or relation of the property and parties, and where there is such a change as to make it inequitable to grant relief, it will be refused." *Pyle v. Ferrell*, 12 Ill. 2d 547, 552 (1958) (citing *McKey v. McKean*, 384 Ill. 112 (1943)).

¶ 26        The party asserting *laches* bears the burden of establishing the defense by a preponderance of the evidence. *O'Brien v. Meyer*, 281 Ill. App. 3d 832, 834 (1996). Two elements must be established for *laches* to successfully defeat a claim: (1) lack of diligence by the party asserting the claim and (2) prejudice to the opposing party resulting from the delay. *Tully*, 143 Ill. 2d at 432. While *laches* depends on the facts and circumstances of each case (*id.* at 432-33), it may be determined on a motion

to dismiss if its applicability is established on the face of the pleadings (*In re Adoption of Miller*, 106 Ill. App. 3d 1025, 1032 (1982)).

¶ 27    Defendants argue that *laches* can never apply to a petition seeking relief from a void judgment because a void judgment may be attacked at any time. See, *e.g.*, *People v. Castleberry*, 2015 IL 116916, ¶ 11 (" 'Where jurisdiction is lacking, any resulting judgment rendered is void and may be attacked either directly or indirectly at any time.' " (quoting *People v. Davis*, 156 Ill. 2d 149, 155 (1993))). Defendants' argument disregards caselaw recognizing that *laches* may apply in appropriate circumstances to preclude relief from a void judgment. Illinois courts have long held that *laches* may be raised in response to a collateral attack on a void judgment. See, *e.g.*, *James v. Frantz*, 21 Ill. 2d 377, 383 (1961) ("*laches* is a familiar defense when the validity of an earlier judgment or decree has been attacked"); *Koberlein v. First National Bank of St. Elmo*, 376 Ill. 450, 456-57 (1941) (upholding *laches* as a defense to a proceeding to set aside a foreclosure judgment based on lack of service); *In re Jamari R.*, 2017 IL App (1st) 160850, ¶ 55 (" 'Illinois cases recognize that even if service of process is defective an attack on a decree may be barred by *laches*' " (quoting *Rodriguez v. Koschny*, 57 Ill. App. 3d 355, 361 (1978))); *Miller v. Bloomberg*, 60 Ill. App. 3d 362, 365 (1978) ("a void decree may be attacked at any time by the parties themselves or by any person who is affected thereby *** although the equitable defense of laches may be interposed").

¶ 28    Nevertheless, despite the caselaw to the contrary, defendants raise several arguments in support of their position that *laches* does not apply to an attack on a void judgment. First, they argue that applying *laches* under these circumstances effectively imposes a due diligence requirement on jurisdictional challenges to void orders. This argument confuses the procedural requirements for bringing a section 2-1401 petition with the defense of *laches*. *Laches* is an affirmative defense that is unrelated to the merits of the suit. *Federal National Mortgage Ass'n v. Altamirano*, 2020 IL App (2d) 190198, ¶ 26; see also *Richter*, 2016 IL 119518, ¶ 50 (*laches* is an affirmative matter that avoids the effect of or defeats the claim under section 2-619(a)(9)). While defendants were not required to allege or prove due diligence in bringing their petition (*Sarkissian*, 201 Ill. 2d at 104), plaintiffs were not precluded from raising *laches* as a defense. An affirmative defense admits the sufficiency of the petition but asserts new matter to defeat the claim. *Altamirano*, 2020 IL App (2d) 190198, ¶ 21. Defendants' argument fails to recognize that, "in resolving a

- 10 -

*laches* issue, the merits of the [section] 2-1401 petition are not a consideration." *Id.*[1]

¶ 29    Defendants next contend that an equitable defense may not be asserted against a petition that raises a purely legal question. See *In re Luis R.*, 239 Ill. 2d 295, 299 (2010) (the absence or presence of jurisdiction is a purely legal question). Defendants rely on *Walters*, 2015 IL 117783, but this case is distinguishable. The question raised in this appeal—whether *laches* can be raised as an affirmative defense in response to a section 2-1401 petition alleging a void judgment—was neither raised nor considered by the court in *Walters*. At issue in that case was the legal sufficiency of a section 2-1401 petition and whether the trial court could exercise equity to relax the statutory due diligence requirements. *Id.* ¶¶ 26-28. Thus, *Walters* is of no help to defendants, as it did not involve *laches* or any other affirmative defense.

¶ 30    Furthermore, there is no support for defendants' assertion that an equitable affirmative defense cannot be raised in a purely legal matter, particularly where defendants here are seeking both legal and equitable relief. See *Altamirano*, 2020 IL App (2d) 190198, ¶ 22 (" '*[L]aches* is now routinely applied in lawsuits simultaneously seeking both legal and equitable remedies.' " (quoting *Valdovinos v. Tomita*, 394 Ill. App. 3d 14, 18 (2009))). We thus reject this argument. We also reject defendants' contention that the decisions allowing a *laches* defense to an attack on a void judgment represent a narrow exception involving compelling special interests, *e.g.*, mineral rights or the welfare of minor children, that do not apply to this case. No previous case has so limited its holding, and we decline to impose the limitation suggested by defendants.

¶ 31    In this case, both elements of *laches* are clearly established on the face of the record. The first element is a lack of diligence by the party asserting the claim. *Tully*, 143 Ill. 2d at 432. This element "encompasses the plaintiff's delay in bringing the action while having notice or knowledge of defendant's conduct and the opportunity to file suit." *Tillman v. Pritzker*, 2021 IL 126387, ¶ 26 (citing *Pyle*, 12

---

[1]For this reason, some courts have found it unnecessary to determine whether the judgment being challenged is, in fact, void if *laches* applies. See *James*, 21 Ill. 2d at 381; *Pyle*, 12 Ill. 2d at 552; *Miller v. Siwicki*, 8 Ill. 2d 362, 365 (1956); *Jamari R.*, 2017 IL App (1st) 160850, ¶¶ 50, 65; *Miller*, 106 Ill. App. 3d at 1030.

Ill. 2d at 553). There is no dispute that defendants received actual notice of the foreclosure complaint when they were served on April 1, 2011. Nor is it disputed that defendants did nothing to protect their rights in the property for more than seven years after receiving notice and more than six years after the property was sold at a judicial sale. Defendants' responses to the motions to dismiss did not include any affidavits or other evidentiary materials to show that their six-year delay was reasonable. Nor do they offer any explanation for their delay in their briefs to this court.

¶ 32     Defendants argue that it is improper to decide the due diligence issue on the pleadings because their requests for discovery and an evidentiary hearing were denied by the trial court. We disagree. Throughout this litigation, defendants have never argued that they did not receive actual notice or that they acted with due diligence in bringing their petition. We fail to see how discovery and a hearing would be necessary to resolve this issue. For these reasons, we find that the element of lack of diligence has been established on the face of the pleadings.

¶ 33     The second element of *laches* is prejudice to the opposing party resulting from defendants' delay in filing the petition. A party suffers prejudice in the context of *laches* where he or she "incurs risk, enters into obligations, or makes expenditures for improvements or taxes" while the other party remains passive. *Pyle*, 12 Ill. 2d at 555. Both PNC and third-party respondents fall within this category. PNC was prejudiced because the six-year delay increased defendants' damages without detriment to themselves, resulted in PNC selling the property to *bona fide* purchasers, and prevented PNC from being able to recover the property used to secure defendants' loan. With respect to third-party respondents, they purchased the property for value and expended considerable sums building a home on the property and paying taxes and insurance. Thus, we find that the record supports a finding of prejudice as to both PNC and third-party respondents. We hold that both elements of *laches* are established in the record and, therefore, that the trial court did not err in dismissing defendants' petition based on *laches*.

¶ 34     Finally, defendants argue that the equitable doctrine of unclean hands bars the application of *laches* to their petition. The unclean hands doctrine bars relief when the party seeking that relief is guilty of misconduct in the subject matter of the litigation. *Jameson Real Estate, LLC v. Ahmed*, 2018 IL App (1st) 171534, ¶ 83.

Defendants contend that PNC is guilty of unclean hands by falsely representing that it properly served defendants when it did not. They also argue that third-party respondents committed misconduct because they took title to the property while being on notice of a jurisdictional defect. This argument is forfeited, as it was not raised in the trial court. See *1010 Lake Shore Ass'n v. Deutsche Bank National Trust Co.*, 2015 IL 118372, ¶¶ 14-15. Even if not forfeited, however, the claim is unavailing because defendants fail to provide any evidence of fraud or bad faith. See *Gambino v. Boulevard Mortgage Corp.*, 398 Ill. App. 3d 21, 60 (2009) (for the unclean hands doctrine to apply, the party's misconduct must rise to the level of fraud or bad faith).

¶ 35                                     CONCLUSION

¶ 36       For the foregoing reasons, the judgment of the appellate court, affirming the circuit court's dismissal of defendants' petition for relief from void judgments, is affirmed.

¶ 37       Affirmed.