2025 IL App (1st) 230501-U

Order filed: February 20, 2025

FIRST DISTRICT
FOURTH DIVISION

No. 1-23-0501

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| TURNER REEVES III, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | |
| | ) | |
| HONORABLE THOMAS R. ALLEN, | ) | |
| JEFFREY KENDALL, LIAM BRENNAN, | ) | No. 17 CH 14935 |
| DAN GUERIN, JANE RADOSTITS, | ) | |
| DUPAGE COUNTY STATE'S ATTORNEY'S | ) | |
| OFFICE, CAROL STREAM POLICE | ) | |
| DEPARTMENT, JOSEPH BIRKETT, and | ) | |
| NICHOLAS P. CASTIGLINE, | ) | Honorable |
| | ) | Thomas Allen, |
| Defendants-Appellees. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE ROCHFORD delivered the judgment of the court.
Justices Lyle and Ocasio concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We affirmed the dismissal with prejudice of plaintiff's section 2-1401 petition.

¶ 2    A jury convicted Turner Reeves III of first-degree murder, aggravated kidnapping, aggravated criminal sexual assault, and concealment of a homicidal death. He subsequently filed a two-count *pro se* "complaint for *mandamus* or prohibition relief" against multiple defendants including various DuPage County assistant state's attorneys, the Carol Stream police department, and a circuit court judge, seeking his release, the expungement of his convictions, and the dismissal

of all charges against him. The circuit court dismissed Reeves' *mandamus* complaint with prejudice. Nineteen months later, Reeves filed a petition pursuant to section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2022)) to vacate the dismissal order. The circuit court entered an order dismissing the section 2-1401 petition with prejudice. Reeves filed a motion to reconsider, which the court denied. Reeves now appeals. We affirm.

¶ 3     The evidence at trial showed that on May 31, 2002, the 14-year-old victim's parents reported her missing when she did not come home from school. The police investigation involved officers from Carol Stream, Elmhurst, and Bartlett and led them to question Reeves, who gave differing accounts of his involvement in the victim's disappearance. Detective Kelly Lally of the Carol Stream police department testified that he questioned Reeves on June 2, 2002, and Reeves stated that he saw the victim on May 31, 2002, shortly after arriving at Bartlett High School to pick up his cousin Jarrett Curtis. Reeves told Lally he saw the victim enter a white Buick with two male Hispanics and leave the school.

¶ 4     Lally testified that on June 3, 2002, Reeves was arrested and told officers that the victim had been in his automobile along with Curtis and Skylar Chambers on May 31, 2002. They drove to a forest preserve, where Chambers and the victim walked into the woods and Reeves lost sight of them for 45 minutes. Reeves stated that Chambers returned from the woods alone, saying that the victim had met up with some friends and left with them.

¶ 5     Officer Michael Campise of the Elmhurst police department testified that Reeves gave him a different account of the events of May 31, 2002. Reeves told Campise that he realized the victim had died but did not know how she died. Reeves said he was scared of Chambers and did not ask him any questions about the victim. Reeves gave Campise detailed instructions on where to find the body.

¶ 6     Dr. Nancy Jones, a forensic pathologist, testified that the victim was sexually assaulted, suffered blunt trauma to the head and died from strangulation.

¶ 7     DuPage County Assistant State's Attorney Jeff Kendall testified that he participated in a conversation with Reeves and Lally on June 4, 2002. Kendall asked Reeves why he did not try to stop Chambers from assaulting and killing the victim, and Reeves responded that he was afraid of Chambers.

¶ 8     Tamera Camp, a forensic scientist, testified that she analyzed oral, rectal and vaginal swabs taken from the victim. She also analyzed fluids found on the victim's pants and on the carpet inside Reeves' automobile. Camp found Reeves' DNA on the vaginal and rectal swabs, on the crotch of the victim's pants and on the carpet sample. The rectal and vaginal swabs and the fluid on the crotch of the victim's pants showed Reeves was the minor contributor while Chambers was the major contributor of semen.

¶ 9     Reeves testified on his own behalf. Reeves stated that after school on May 31, 2002, he gave Curtis, Chambers, and the victim a ride to his house and parked in the garage. Reeves and Curtis entered the house while Chambers and the victim remained in the automobile inside the garage. Reeves returned to the garage about five minutes later and entered the automobile, where he saw the victim with her pants pulled down. She rubbed Reeves' penis, causing him to ejaculate.

¶ 10    Chambers told Reeves to retrieve a pillow from inside the house. Reeves brought two pillows, put them inside the vehicle, and went back inside the house for about 20 minutes. When Reeves returned to the automobile, Chambers was on top of the victim and had her in a chokehold. The victim lost and regained consciousness while Chambers held a pillow over her face. Chambers told Reeves to grab the victim's arm, which he did, because he thought that Chambers would then

take the pillow off her face. The victim put her arm on Chambers' shoulder and then her arm came down "real slowly." Reeves asked Chambers what he was doing and told him, "This isn't right."

¶ 11    Chambers told Reeves to grab some shovels. Reeves did so and he drove them to the location where the victim would be buried. Reeves helped Chambers pull the victim from the automobile, dig a hole and put the victim in the hole. Reeves then drove to a car wash where he cleaned the vehicle's interior and exterior. Reeves denied knowing that Chambers planned to kill the victim.

¶ 12    On October 31, 2005, the jury convicted Reeves on all counts and the trial court sentenced him to natural life in prison without parole for murder. The court also imposed 30-year prison terms for aggravated kidnapping and aggravated criminal sexual assault, concurrent with each other and consecutive to the natural life sentence. The court imposed a five-year term for the concealment of a homicidal death, consecutive to the other sentences. On appeal, we affirmed Reeves' convictions but vacated the consecutive sentences and ordered the mittimus corrected to show that all sentences are to run concurrently. See *People v. Reeves*, 385 Ill. App. 3d 716 (2008).

¶ 13    Reeves filed a postconviction petition in 2009, which was dismissed at the second stage in October 2012. On appeal, we affirmed. See *People v. Reeves*, 2015 IL App (1st) 130336-U.

¶ 14    On October 25, 2017, Reeves filed his two-count *pro se mandamus* complaint (the first *mandamus* complaint) against defendants, which included a circuit court judge as well as various DuPage County assistant state's attorneys and the Carol Stream police department[1]. In count I, against the assistant state's attorneys and police department, Reeves alleged that on June 3, 2002,

---

[1] Reeves technically labeled the allegations against the assistant state's attorneys and the Carol Stream police department as "Complaint I" and the allegations against the circuit court judge as "Complaint II." However, the allegations were all part of the same pleading and were effectively two different counts in the same complaint.

he was arrested without probable cause and unlawfully held for 72 hours before a warrant was obtained for his arrest on June 6. Reeves contended that his illegal arrest and 72-hour hold was secretly approved by members of the DuPage County state's attorney's office at the request of members of the Carol Stream police department. During those 72 hours, Carol Stream detectives obtained incriminating statements from him. Reeves argued that the illegal arrest and 72-hour hold constituted prosecutorial misconduct, a violation of the separation of powers, a fraud upon the court, and an abridgement of his due process rights. Reeves asked that the statements be suppressed. He also sought his release, the expungement of his convictions, and the dismissal of all charges against him.

¶ 15    Count II of the first *mandamus* complaint was directed against the circuit court judge who had denied Reeves' earlier motion to suppress statements made by Curtis. Reeves argued that the judge "exceeded his authority" by finding that Curtis' statements were voluntary, where the only witnesses who testified at the suppression hearing indicated that the statements were involuntary. Reeves asked the court to rescind its order finding the statements voluntary, vacate his convictions, and dismiss the charges against him.

¶ 16    On July 24, 2018, Reeves filed his *pro se* amended *mandamus* complaint against defendants, largely reiterating that his allegedly illegal arrest on June 3, 2002, and his subsequent 72-hour hold was unconstitutional and that the circuit court judge exceeded its authority by denying his motion to suppress Curtis' statements. Reeves did not seek leave of court prior to filing his amended *mandamus* complaint and leave was not granted.

¶ 17    On October 17, 2018, the circuit court entered an order dismissing the first *mandamus* complaint with prejudice pursuant to section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2018)), finding that defendants were immune from prosecution, that the complaint was barred by

collateral estoppel, and that the complaint failed to state a cause of action. The dismissal order did not explicitly acknowledge or address the amended *mandamus* complaint.

¶ 18    On May 22, 2020, Reeves filed a three-count *pro se* section 2-1401 (735 ILCS 5/2-1401 (West 2020)) petition to vacate the October 17, 2018, order dismissing his first *mandamus* complaint. In count I of the petition, Reeves argued that a DuPage County assistant state's attorney committed fraud upon the circuit court by stating in his pleadings that Reeves was arrested on June 6, 2002, without alerting the court that he actually had been illegally arrested on June 3, 2002, and held for 72 hours. Reeves contended that the assistant state's attorney's fraudulent statement constituted an abuse of the judicial process, rendering void the October 17, 2018, dismissal order. In count II, Reeves asserted that the October 17 dismissal order should be vacated because it failed to consider that his 72-hour investigative hold was unconstitutional under *People v. Bass*, 2019 IL App (1st) 160640. In count III, Reeves argued that the October 17 dismissal order was void because it failed to ever consider, or rule on, his amended *mandamus* complaint.

¶ 19    On June 30, 2022, the circuit court entered an order dismissing Reeves' section 2-1401 petition with prejudice. First, the court rejected Reeves' argument that the October 17 dismissal order was void, noting that an order is void only when the court lacks jurisdiction or the judgment is based on a facially unconstitutional statute (see *People v. Thompson*, 2015 IL 118151, ¶¶ 31-32), neither of which occurred here.

¶ 20    Second, the court found that Reeves did not act with due diligence by waiting about 19 months after the dismissal order to file the section 2-1401 petition.

¶ 21    Third, the court found that none of the three counts in Reeves' section 2-1401 petition demonstrated the existence of a meritorious claim that would require it to vacate the October 17 dismissal order. Specifically, count I was premised on the assistant state's attorney's allegedly

fraudulent conduct when he misstated the date of Reeves' arrest, but the court determined that Reeves failed to show any intent on the part of the attorney to perpetrate a fraud upon the court. Count II was premised on *People v. Bass*, 2019 IL App (1st) 160640, but the court determined that the applicable portion of *Bass* had been overturned (see *People v. Bass*, 2021 IL 125434) and therefore that count II was moot. Count III was premised on the court's failure to consider his amended *mandamus* complaint when ruling on the dismissal motion. The court noted that Reeves did not seek leave to file the amended *mandamus* complaint and that leave to file was not granted. Even considering the amended *mandamus* complaint, the court found that it did not allege new facts demonstrating the existence of a meritorious claim that would require the vacating of the October 17 order dismissing count I of the first *mandamus* complaint.

¶ 22 Accordingly, the court entered an order granting defendants' motion to dismiss the section 2-1401 petition. Reeves filed a motion to reconsider, which the circuit court denied on February 1, 2023.

¶ 23 Reeves now appeals the dismissal of count III of his section 2-1401 petition. He makes no arguments as to the dismissal of counts I and II and therefore has forfeited any review thereof. See Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020).

¶ 24 Section 2-1401 provides a statutory procedure whereby, under certain conditions, trial courts may vacate or modify a final judgment more than 30 days after the judgment has been entered. 735 ILCS 5/2-1401 (West 2022). Under a traditional section 2-1401 analysis, the petition must set forth specific factual allegations supporting each of the following elements: (1) the existence of a meritorious defense or claim; (2) due diligence in presenting this defense or claim to the circuit court in the original action; and (3) due diligence in filing the section 2-1401 petition. *Hirsch v. Optima, Inc.*, 397 Ill. App. 3d 102, 109 (2009). The burden of proof is on the proponent

by a preponderance of the evidence. *People v. Vincent*, 226 Ill. 2d 1, 7-8 (2007). Proceedings under section 2-1401 must be brought no later than two years after the entry of the challenged order or judgment. 735 ILCS 5/2-1401(c) (West 2022)). When a court enters a dismissal in a section 2-1401 proceeding, that order is reviewed *de novo*. *Vincent*, 226 Ill. 2d at 9-18; *PNC Bank National Association v. Kusmierz*, 2022 IL 126606, ¶ 10.

¶ 25 A section 2-1401 petition is exempt from establishing the traditional elements, however, if it seeks to vacate a void judgment pursuant to subsection (f), which states: "Nothing contained in this Section affects any existing right to relief from a void order or judgment, or to employ any existing method to procure that relief." 735 ILCS 5/2-1401(f) (West 2022); *Sarkissian v. Chicago Board of Education*, 201 Ill. 2d 95, 104 (2002). When a section 2-1401 petition presents a purely legal challenge to a judgment, such as a claim that the underlying judgment is void, the standard of review is *de novo*. *Askew Insurance Group, LLC v. AZM Group, Inc.*, 2020 IL App (1st) 190179, ¶ 21.

¶ 26 Reeves argued below that the October 17, 2018 order dismissing the first *mandamus* complaint was void. The circuit court rejected this argument because it did not lack jurisdiction over the matter nor was the dismissal order based on a facially unconstitutional statute. *Thompson*, 2015 IL 118151, ¶¶ 31-32. Reeves does not contend on appeal that the court erred in so ruling or that the October 17, 2018, dismissal order was void; rather, he makes a fact-dependent challenge to the portion of the June 30, 2022, order dismissing count III of his section 2-1401 petition and, as such, he bears the burden of proving the traditional elements, namely, the existence of a meritorious defense or claim, and due diligence in presenting the defense or claim to the circuit court and in filing the section 2-1401 petition. *Lamarca v. Che Ce Ce Corp.*, 2019 IL App (1st) 182718, ¶ 9.

¶ 27    As discussed, count III of the petition sought relief from the October 17 order dismissing the first *mandamus* complaint, based on the court's failure to consider the allegations contained in the amended *mandamus* complaint. The court rejected Reeves' arguments and dismissed count III of the petition for three reasons: that Reeves failed to act with due diligence in filing the petition, that Reeves did not seek or receive leave to file the amended *mandamus* complaint, and that the amended *mandamus* complaint did not raise any new facts showing the existence of a meritorious claim requiring that the October 17 dismissal order be vacated.

¶ 28    Reeves first argues on appeal that he brought count III within the two-year statute of limitations applicable to section 2-1401 petitions (735 ILCS 5/2-1401(c) (West 2022)) and that, as such, the circuit court erred in finding that he failed to act with due diligence. However, a delay in filing the section 2-1401 petition in the circuit court can be indicative of a lack of due diligence even if the petition was filed within the two-year statute of limitations. See *Cooper v. United Development Co.*, 122 Ill. App. 3d 850 (1984). In determining whether Reeves acted with due diligence, we consider the length of the delay as well as the circumstances attendant to the delay. *Paul v. Gerald Adelman and Associates*, 223 Ill. 2d 85, 100 (2006).

¶ 29    *Cooper*, 122 Ill. App. 3d at 856-57, is informative. In *Cooper*, plaintiffs filed their petition over three months after they became aware of the order dismissing their complaint. *Id.* at 857. The circuit court denied the petition for lack of due diligence. *Id.* at 853. Plaintiffs appealed. The appellate court stated that delays of two to three months "have been regarded by Illinois courts as constituting such a lack of due diligence as to justify denial of the requested post-judgment relief." *Id.* at 856-57. The appellate court looked at the "totality of facts" before it, noted that plaintiffs were not precluded from discovering the existence of the dismissal order sooner or filing their petition at an earlier date, and affirmed the denial of the petition. *Id.* at 857.

¶ 30    In the present case, Reeves delayed filing his petition for 19 months after the October 17 order dismissing count I of the first *mandamus* complaint. He claims that the delay was justified because the petition was prepared during the global lockdowns necessitated by the COVID-19 pandemic. We disagree. The dismissal order was entered on October 17, 2018. COVID-19 was not identified and declared a pandemic until about 14 months later, in January 2020. See Statement on the Second Meeting of the International Health Regulations (2005) Emergency Committee Regarding the Outbreak of Novel Coronavirus (2019-nCoV). Lockdowns did not begin in Illinois until Governor Pritzker issued executive orders to that effect in March 2020. See *e.g.*, Exec. Order No, 2020-7, 44 Ill. Reg. 5536 (Mar. 16, 2020), Exec. Order No. 2020-10, 44 Ill. Reg. 5857 (Mar. 20, 2020). Reeves contends his prison lockdown began one month earlier, in February 2020 and that it lasted "through and beyond May 2020." However, Reeves has offered no reasons for why his petition could not have been filed during the 14 to 16 month period between when the dismissal order was entered in October 2018 and when COVID-19 was declared a pandemic in January 2020 and lockdowns went into effect in February to March 2020. On these facts, we find no error in the circuit court's determination that Reeves' delay in filing the petition constituted a lack of due diligence.

¶ 31    Reeves' failure to act with due diligence provides sufficient basis for affirming the circuit court's order dismissing count III of his section 2-1401 petition. We note, though, that the court provided additional reasons justifying the dismissal. Specifically, the court found that Reeves failed to seek or receive leave to file the amended *mandamus* complaint referenced in count III of the petition and that, even considering the amended complaint, it did not present new facts showing the existence of a meritorious claim requiring the vacatur of the October 17 dismissal order. We proceed to address those findings.

¶ 32    With respect to Reeves' failure to request leave to file the amended *mandamus* complaint, we note that a party does not have an absolute or unlimited right to amend a pleading. *Cedzidlo v. Marriott International, Inc.*, 404 Ill. App. 3d 578, 581 (2010). Generally, a party is required to obtain the court's permission to file an amendment. *Id.* Reeves correctly argues, though, that the failure to seek leave to amend is a procedural error that may be forfeited if no objections to the amended pleading are raised. *Ragan v. Columbia Mutual Insurance Co.*, 182 Ill. 2d 342, 354-55 (1998). Defendants here failed to object to the amended *mandamus* complaint and therefore forfeited the issue regarding Reeves' failure to seek leave to amend. *Id.*

¶ 33    The other basis for the court's June 30, 2022, order dismissing count III of the section 2-1401 petition was its determination that the amended *mandamus* complaint referenced in count III did not assert any new facts raising a meritorious claim for relief from the October 17 dismissal order. Reeves makes absolutely no argument on appeal that the court erred in so finding and therefore he has forfeited any review thereof under Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020), which requires the appellant's brief to contain argument, with citation to authorities and the pages of the record relied on. *Id.* A plaintiff's *pro se* status does not relieve him of complying with the supreme court rules. *Twardowski v. Holiday Hospitality Franchising, Inc.*, 321 Ill. App. 3d 509, 511 (2001).

¶ 34    In sum, Reeves has failed to show on appeal that count III of the section 2-1401 petition was brought with due diligence or that it raised a meritorious claim for relief from the October 17, 2018, dismissal order. Therefore, we affirm the dismissal of count III of the petition.

¶ 35    Affirmed.