2023 IL App (1st) 211449-U
No. 1-21-1449

FIRST DIVISION
July 24, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| JASON BURG, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 21 CH 00262 |
| DAVID BROWN, SUPERINTENDENT OF | ) | |
| POLICE OF THE CITY OF CHICAGO, EDDIE | ) | |
| T. JOHNSON, FORMER SUPERINTENDENT | ) | |
| OF POLICE OF THE CITY OF CHICAGO, and | ) | |
| THE POLICE BOARD OF THE CITY OF | ) | The Honorable |
| CHICAGO, | ) | Neil H. Cohen, |
| | ) | Judge Presiding. |
| Defendants-Appellees. | ) | |

_____

JUSTICE PUCINSKI delivered the judgment of the court.
Justices Hyman and Coghlan concurred in the judgment.

**ORDER**

*Held*:     We affirm the decision of the Police Board of the City of Chicago finding plaintiff-appellant guilty of violations of Chicago Police Department Rules and terminating his employment as a police officer. Plaintiff did not establish that the delay in the filing of charges violated his right to due process, and he did not identity prejudice from the delay to support his affirmative defense of *laches*.

¶ 1    In this administrative review action, plaintiff-appellant Jason Burg appeals from the circuit court order affirming the decision of the Police Board of the City of Chicago (Board) finding him guilty of charges filed by the Superintendent of the Chicago Police Department (Superintendent)) and terminating his employment as a police officer. Burg contends that (1) the nearly nine-year gap between the underlying incident and the filing of charges violated his right to due process of law and (2) the doctrine of *laches* otherwise warranted dismissal of the charges. We conclude that, notwithstanding the delay, Burg's right to due process was not violated. Further, Burg did not identify prejudice resulting from the delay, as required to support his *laches* defense. Accordingly, we affirm the decision of the Board and the judgment of the circuit court.

¶ 2                                             BACKGROUND

¶ 3    Burg was formerly employed as a Chicago police officer. This case stems from Burg's response to an incident in the early morning hours of June 26, 2010, near the Pavilion Apartments complex in Chicago. On that date, Luis Cordero and his girlfriend Heather Rzany were assaulted by Chris Gofron, an off-duty Chicago police officer.[1] The incident was witnessed by Angel De La Rosa, a Pavilion Apartments security officer. Significant to this appeal, De La Rosa passed away before the charges at issue were filed against Burg.

¶ 4    Burg was the first officer to respond to a disturbance call at the scene of the assault, although his actions after he arrived at the scene are disputed. Burg maintained that the assailant was gone by the time he arrived at the scene. However, Cordero and Rzany claimed (and the Board ultimately found) that Burg spoke with Gofron and allowed him to leave the scene without arresting him.

¶ 5         **Burg's Reported Version of Events**

---

[1] Cordero and Rzany later married. Rzany is sometimes referred to as "Heather Cordero" in the record.

¶ 6    Hours after the incident, Burg filed a Chicago Police Department (CPD) incident report, in which he stated that the identity of the assailant was unknown. Burg reported that when he arrived at the scene, he encountered Cordero lying on the ground and Rzany screaming for help. The report reflected that Burg spoke with De La Rosa, who said he observed the altercation in which the offender "struck [the] victims with [a] revolver type handgun." According to the report, De La Rosa said that the "[o]ffender proceeded to enter [De La Rosa's] security vehicle at which time offender stated he was police and needed assistance." Burg's report elsewhere reflected that Rzany told him that the offender "flashed a badge" and "stated he was police but did not specify what department." De La Rosa reported that the unknown offender "fled" the scene.

¶ 7    **Related Civil Litigation and De La Rosa's Deposition Testimony**

¶ 8    The record reflects that Cordero and Rzany disputed Burg's version of events, claiming that Burg allowed Gofron to leave the scene. In 2010, Cordero and Rzany commenced a federal lawsuit, *Cordero et al. v. City of Chicago et al.*, No. 10 CV 4193, in which the City of Chicago, Gofron, and Burg were defendants.

¶ 9    In April 2011, De La Rosa was deposed in the federal lawsuit, during which he was questioned by an attorney for Cordero and by an attorney representing the defendants. De La Rosa recounted that he was working a shift as security for the Pavilion Apartments on the night in question. The incident occurred sometime after midnight, when De La Rosa was patrolling the complex in a Chevy Blazer that was labeled as a security vehicle.

¶ 10    De La Rosa was driving when Gofron waved him down, "jumped in the vehicle" and told him to drive.[2] De La Rosa observed that Gofron was holding a beer, smelled like alcohol, and had come from the direction of the "Cabana bar" in the apartment complex. De La Rosa then received a call

---

[2] De La Rosa did not identify Gofron by name. However, there is no factual dispute that he was referring to Gofron.

from another security officer, Ron Kazcmarek, about a noise complaint from a nearby picnic area. De La Rosa drove to the picnic area, where he saw Cordero and Rzany at a picnic table. De La Rosa told them the area was closed. Gofron (who was still in De La Rosa's vehicle) began screaming at Cordero and Rzany, and Cordero "started screaming back." Gofron exited the vehicle and engaged in a verbal altercation with Cordero, during which he displayed a badge and told Cordero that he was a "cop." After Cordero responded that he "was a cop killer," Gofron drew a gun and then struck Cordero repeatedly with the bottom of the gun. De La Rosa radioed Kazcmarek and told him to call the police.

¶ 11 Eventually, Gofron re-entered De La Rosa's security vehicle and told De La Rosa to "take him to his car." De La Rosa testified that he drove slowly with Gofron, hoping police would arrive. When De La Rosa saw police, he stopped his vehicle, and both he and Gofron exited. De La Rosa testified that he saw multiple police vehicles and "like five" officers, as well as Cordero and Rzany. De La Rosa did not know the names of any of the responding police officers.

¶ 12 De La Rosa recalled that a number of officers spoke with Cordero, while another officer spoke with Gofron. De La Rosa did not hear what was said between them. A short time later, De La Rosa saw Gofron walking away. De La Rosa recalled that Rzany told the police that "he's walking away", to which one of the officers responded with words to the effect of "[h]e can't get away", or "[h]e won't leave, or [h]e'll be back." De La Rosa was not sure which officer made that statement. De La Rosa testified that Gofron "just left" and "didn't come back" after walking away from the scene.

¶ 13 The record reflects that the federal lawsuit was settled in 2012.

¶ 14 **The Investigation into Burg's Conduct**

¶ 15    The record reflects that in 2010, a complaint by Rzany and Cordero initiated an investigation by the Independent Police Review Authority (IPRA) regarding Burg's response to the incident.[3] IPRA interviewed Rzany and Cordero in 2010. IPRA interviewed Burg on May 6, 2011. In that interview, Burg stated that the offender was gone by the time Burg arrived at the scene. Elsewhere in the interview, Burg recalled that Cordero told him that "police beat him up" and that Rzany said the offender had flashed a badge. Burg also recalled that De La Rosa told him that the offender had said "he was the police."

¶ 16    Burg was subsequently accused of giving a false statement to IPRA in the May 6, 2011 interview. In May 2012, Burg gave a statement to IPRA in which he "st[ood] by" his May 2011 statement and maintained that he never saw or spoke with Gofron at the scene.

¶ 17    The record reflects (and the Superintendent does not dispute) that the investigation into Burg's conduct substantially concluded in 2014. The record reflects that as of May 2014, IPRA had drafted a "Notification of Charges/Allegations" directed to Burg.[4] However, actual charges were not filed until early 2019.

¶ 18    **The Superintendent Charges Burg in 2019**

¶ 19    On January 3, 2019, the Superintendent charged Burg with violating a number of CPD Rules and Regulations.[5] The charges essentially alleged that: (1) Burg allowed Gofron to leave the scene; (2)

---

[3]In 2017, the IPRA was succeeded by a new entity, the Civilian Office of Police Accountability (COPA).

[4] The record indicates that in 2015, IPRA completed "additional interviews in furtherance of the documentation of two witnesses [sic] statements regarding the incident" but the agency determined that "the findings and recommendation remain unchanged."

[5] Burg was charged with violating CPD Rule 2 ("Any action or conduct which impedes the Department's efforts to achieve its policy and goals or brings discredit upon the Department"), Rule 3 ("Any failure to promote the Department's efforts to implement its policy or accomplish its goals"), Rule 5 ("Failure to perform any duty"), Rule 6 ("Disobedience of an order or directive, whether written or oral"),

Burg's incident report falsely indicated that the offender was unknown; and (3) Burg falsely stated in his May 2011 IPRA interview that the offender was gone by the time he arrived on the scene.

¶ 20 **Administrative Proceedings**

¶ 21 The record reflects that De La Rosa passed away in 2019. In January 2020, the Superintendent filed a motion before the hearing officer of the Board to admit De La Rosa's deposition testimony in the Board proceedings. The motion was granted.

¶ 22 In February 2020, Burg filed a motion to dismiss the charges against him. Among other arguments, Burg averred that the Superintendent's delay in bringing charges severely prejudiced him, in that he no longer could cross-examine De La Rosa as to whether Burg had contact with Gofron. Burg also asserted that the failure to bring charges in a timely manner violated his due process rights. He argued that the nearly nine-year gap between the incident and the filing of charges in 2019 violated Chicago Police Department General Order G08-01, which called for "prompt" investigations into officer misconduct.

¶ 23 Burg also argued that the doctrine of *laches* warranted dismissal of the charges. He pointed out that there was no "meaningful investigation" after 2014. Burg claimed he was severely prejudiced by the delayed filing of charges, as he could not locate additional witnesses or crime scene evidence would not be able to cross-examine De La Rosa.

¶ 24 In opposing the motion to dismiss, the Superintendent argued that case law does not support a due process claim based on a delay in *filing charges* against an officer, as opposed to a delay in *adjudication*. The Superintendent asserted: "The reason that due process is not implicated by a delay in investigation (as opposed to in adjudication) is because the officer is still working and

Rule 14 ("Making a false report, written or oral"), and Rule 21 ("Failure to report promptly to the Department any information concerning any crime or other unlawful action.").

getting paid." The Superintendent stated that Burg had not been impacted financially by the filing of the charges in 2019, "because he has been inactive and on duty disability since 2014" and his receipt of disability benefits was "unaffected by the filing of charges."[6]

¶ 25    The Superintendent's response elsewhere disputed Burg's claim that an investigation was not "promptly" initiated under General Order 08-01. The Superintendent claimed that preliminary investigative steps were taken "soon after the CR [Complaint Register] was opened." The Superintendent acknowledged that the investigation had been "closed and reopened a couple of times" "to ensure that a thorough investigation was conducted." The Superintendent also stated that "[o]n information and belief, at some point, the same allegations were being investigated under two different CR files." In any event, the Superintendent argued that even a violation of General Order 08-01 would not warrant dismissal of charges.

¶ 26    With respect to Burg's reliance on *laches*, the Superintendent argued that this doctrine requires a showing of prejudice, and that Burg failed to show that the delay limited his ability to gather evidence. Despite De La Rosa's death, the Superintendent argued that there was no prejudice to Burg, since De La Rosa's account of events was "well-documented," including in his deposition testimony. The Superintendent otherwise argued that were not compelling or "extraordinary circumstances" to justify *laches*, given the seriousness of Burg's conduct.

¶ 27    The Police Board reserved ruling on Burg's motion to dismiss, pending evidentiary hearing. The evidentiary hearing occurred on August 13 and 14, 2020, and included testimony from Rzany and Burg.

---

[6] Burg subsequently testified at the evidentiary hearing that he had not been on active duty since being injured in an accident on January 1, 2014.

¶ 28    Rzany described how Gofron assaulted her and Cordero after getting out of a vehicle driven by a De La Rosa. After the assault, Gofron got back into the security vehicle. Around the time Burg arrived, she saw the vehicle return and Gofron got out. She identified Gofron to Burg as the attacker. According to Rzany, Gofron showed Burg a badge and told him that he was a police officer. Burg then told Gofron to "[g]et out of here" and allowed him to walk away.

¶ 29    Burg denied ever having any interaction with Gofron. Burg recalled seeing De La Rosa pull up in a security truck, but Burg stated he did not remember if there was another male in the vehicle. Among other documentary evidence, the Board also considered a recording of Rzany's 911 call, recording of Burg's police radio communications from the time of the incident, and deposition testimony of Burg and De La Rosa from the federal lawsuit.

¶ 30    **The Police Board's December 2020 Findings and Decision**

¶ 31    The Police Board issued findings and decision on December 17, 2020. By a vote of 8-1, the Board (1) denied Burg's motion to dismiss the charges; (2) found Burg guilty of each charged violation, and (3) determined that he should be terminated.

¶ 32     With respect to the motion to dismiss, the Board stated that Appellate Court decisions had "affirmed the Board's decisions to deny motions to dismiss that make essentially the same arguments," citing *Orsa et al v. Police Board,* 2016 IL App (1st) 121709 and *Chisem v. McCarthy*, 2014 IL App (1st) 132389. The Board rejected Burg's claim that due process was violated by the timing of the charges. The Board recognized that in *Lyon v. Dep't of Children and Family Services*, 209 Ill. 2d 264 (2004), our supreme court found that a teacher's due process rights were violated by a delay in an adjudication, during which time the teacher was prevented from working. The Board found that Burg's situation was "fundamentally different," since he was "complaining about the delay from the time of the incident to the bringing of charges, not the time it took to try him

on the charges." The Board pointed out that Burg was "paid his full salary and benefits from the time of the incident until he went on disability" and was not suspended without pay until after the charges were filed.

¶ 33    The Board also rejected Burg's reliance on General Order G08-01 as a basis to dismiss the charges. The Board reasoned that G08-01 did not "set any absolute deadline" to bring charges, and its violation "does not provide a basis for automatic dismissal of charges against an officer." The Board stated that although it "d[id] not condone the protracted and long investigation in this case", it would not dismiss the charges for this reason.

¶ 34    With respect to Burg's *laches* argument, the Board noted that the mere lapse of time is insufficient to support that defense, without a showing of prejudice. The Board concluded that Burg had "not demonstrated that the delay caused him the material prejudice that he is required to prove." The Board noted that although De La Rosa had died, he had testified in a deposition at which Burg's counsel had an opportunity to question him. The Board otherwise rejected as "speculative" Burg's suggestions that the delay prevented him from locating other witnesses or evidence. The Board found no other "extraordinary" or "compelling" circumstances to warrant the application of *laches*.

¶ 35    After explaining why it denied Burg's motion to dismiss, the Board found Burg guilty of each of the charges. The Board relied on the "credible and convincing" hearing testimony of Rzany, The Board found that certain aspects of her account were corroborated by De La Rosa's deposition testimony, as well as the recording of the 911 call. In contrast, the Board found that Burg's hearing testimony contained "inconsistencies, purported failure in memory, and incredible explanations."

¶ 36    **Dissent from the Majority Decision**

¶ 37    In his dissent from the majority's decision, Board member John P. O'Malley, Jr. expressed his view that the delay in bringing charges was "inexcusable." O'Malley emphasized that the Board

never heard live testimony from De La Rosa and that his prior deposition testimony "never pointed directly to [Burg]." O'Malley thus opined that the delay in bringing charges "weighed heavily" against Burg's ability to defend himself. O'Malley believed that Burg was not proven guilty, and that the delay in bringing charges was "unconscionable."

¶ 38 A portion of the majority's findings specifically addressed the dissent. The majority stated: "While we wholeheartedly agree with [O'Malley's] point that the delay in this case is unconscionable, the failures of the accountability system—which we have frequently criticized in our decisions—should not be used to suggest that the evidence is not sufficient to support the ruling of the majority nor a reason to overlook the strong case outlining the Rule violations of [Burg]." The majority reasoned that "in spite of the delay in the case coming before the Board, there is more than adequate evidence" that Burg told Gofron to leave the scene and then filed a false report.

¶ 39 **Complaint for Administrative Review**

¶ 40 On January 19, 2021, Burg filed a complaint for administrative review pursuant to the Administrative Review Act, 735 ILCS 5/3-101 *et seq* (West 2020). Within the complaint, Burg asserted that the Board's denial of his motion to dismiss violated the doctrine of *laches*, as well as "the Collective Bargaining Agreement between the City of Chicago and The Fraternal Order of Police Lodge 7, due process and Orders, Rules and Regulations of the Chicago Police Department." Burg asserted that his due process rights were violated by the Superintendent's delay in bringing charges, insofar as the death of De La Rosa during the delay deprived him of his "constitutionally protected right to fair cross-examination." Burg otherwise asserted that the Board's decision was against the manifest weight of the evidence and misapplied the law. Burg requested reversal of both the Board's denial of his motion to dismiss, as well as its decision to discharge him.

¶ 41    The circuit court ordered Burg to submit a brief in support of the complaint. Burg filed that brief on June 30, 2021. Within that brief, Burg maintained that he had not received the requisite due process. Burg noted that the collective bargaining agreement (CBA) between the CPD and the Chicago Fraternal Order of Police provides that, unless otherwise authorized by the Superintendent, "no complaint or allegation of any misconduct concerning any incident or event which occurred five (5) years prior to the date the complaint or allegation became known to the Department shall be made the subject of a Complaint Register investigation."[7]

¶ 42    Burg also relied upon the language in CPD General Order G08-01 requiring "prompt, thorough investigations" into allegations of misconduct. Chicago Police Department General Order G08-01 (eff. June 7, 2017).[8] Burg acknowledged that the term "prompt" was not defined in the General Order, yet argued that the CBA indicates that the "Department itself does not consider a five-year delay to be 'prompt.'"

¶ 43    Burg acknowledged that he had been paid during the delay. Yet, he claimed that the delay "made it nearly impossible" to develop his defense, as "[w]itnesses moved on, a material witness passed away and evidence was not preserved." He asserted that if charges were filed in a timely manner, he could have sought out additional witnesses and evidence and cross-examined De La Rosa.

¶ 44    For similar reasons, Burg argued that the *laches* doctrine applied, as there was a lack of diligence in bringing charges and resulting prejudice. He asserted there was no valid reason for the delay,

---

[7]    The CBA is not cited in appellant's brief but is available at: https://www.chicago.gov/content/dam/city/depts/dol/Collective%20Bargaining%20Agreement3/FOPCBA2012-2017_2.20.15.pdf.

[8]    At the time charges were filed against Burg,  General Order G08-01 provided that "Prompt, through investigation will be conducted into allegations of misconduct to establish facts which can absolve the innocent and identify the guilty." General Order, effective June 7, 2017. (available at https://home.chicagopolice.org/wp-content/uploads/2017/08/BIA-Revised-Policies-1.pdf). The current version of General Order G08-01 does not use the "prompt, thorough" phrase. However, it provides that investigations must be conducted "efficiently" and calls for "objective, comprehensive, and timely Log Number investigations into complaints." General Order G8-01 (eff. Dec. 31, 2022), available at http://directives.chicagopolice.org/#directive/public/6362

and the Superintendent "showed zero diligence" in pursuing the investigation. As to prejudice, Burg reiterated his claim that his ability to develop a defense was hindered, especially as he could not cross-examine De La Rosa. Burg acknowledged De La Rosa's deposition in the civil lawsuit, but asserted that Burg's "interest and motivations" in the prior lawsuit were "not identical" in the present matter. He averred that he would have pursued additional evidence for his defense, had he known the "Superintendent would lie in wait for several years" while "evidence eroded." He otherwise argued that the nearly nine-year delay in this case established "extraordinary" circumstances, justifying application of *laches*.

¶ 45    In his response brief, the Superintendent argued that Burg's due process claim was foreclosed by the Appellate Court decisions in *Chisem*, 2014 IL App (1st) 132389 and *Orsa*,2016 IL App (1st1) 121709, which found no violation of due process violations where the accused officers had been paid before charges were filed. The Superintendent claimed that due process is triggered by "delay in adjudication" during which an officer is suspended without pay, but not by a delayed investigation when the officer continues to be paid.

¶ 46    Likewise, the Superintendent argued that *Chisem* and *Orsa* foreclosed Burg's reliance on General Order G08-01, insofar as those decisions observed that the General Order did not set "an absolute deadline." The Superintendent otherwise argued that even if an investigation was not "prompt" under that General Order, it is not grounds for dismissal of the charges. To the extent Burg's brief relied on the CBA, the Superintendent asserted Burg waived the argument by not raising it before the Board. The Superintendent otherwise argued that the cited language from the CBA did not impose a time limit to file charges.

¶ 47    Regarding *laches*, the Superintendent emphasized that the doctrine does not apply to governmental entities absent extraordinary circumstances." The Superintendent disputed Burg's claim that

"evidence eroded" due to the delay, noting that De La Rosa had been deposed and cross-examined by Burg's counsel. Even without De La Rosa's testimony, the Superintendent urged there was "overwhelming evidence" supporting the Board's decision.

¶ 48     **The Circuit Court Affirms the Board's Decision**

¶ 49     On October 13, 2021, the circuit court affirmed the Board. With respect to Burg's due process claim, the court found that, "Like the officers in *Orsa* and *Chisem*, Burg was not deprived of any property interest as he remained working and was then on paid disability" until the charges were filed. The court also noted that Burg "had a full and fair opportunity to contest the charges at his hearing." The circuit court likewise relied on *Orsa* and *Chisem* to reject Burg's reliance on the language in General Order G08-01 calling for "[p]rompt, thorough investigations" into allegations of police misconduct. The circuit court noted that "the general order did not contain any firm deadline by which investigations must be completed" and that "nothing in the directive supported automatic dismissal of charges for its violation." The circuit court also found that Burg's reliance on the CBA was waived, and that in any event the cited CBA language "applies to the opening of an investigation, not the filing of charges."

¶ 50     The circuit court also rejected Burg's *laches* argument. The court found that although there was a "significant time lapse" between the conclusion of the investigation in 2014 and the filing of charges in 2019, the record did not show that Burg had been prejudiced, or that there were "extraordinary circumstances" to support the application of laches against a governmental entity. The court noted that although De La Rosa had died, Burg's counsel had a chance to cross-examine him at the deposition in the civil litigation. The court found that Burg failed to identify any other evidence that "eroded" due to the delay, and it was mere "speculation" for him to suggest that he could have developed additional evidence or found additional witnesses.

¶ 51 The circuit court otherwise rejected Burg's contentions that the factual findings were against the manifest weight of the evidence, or that the decision to discharge him was arbitrary and capricious.

¶ 52 Burg filed a timely notice of appeal on November 5, 2021.

¶ 53                                              ANALYSIS

¶ 54 On appeal, Burg does not raise any challenge as to whether the evidence supported the Board's factual findings or its ultimate decision to discharge him. Instead, he avers that the Board erred when it denied his motion to dismiss the charges. He asserts that dismissal was warranted for two primary reasons, namely: (1) his due process rights were violated by the Superintendent's delay in bringing charges and (2) the doctrine of *laches* warranted dismissal of the charges. For the following reasons, we find these arguments lack merit.

¶ 55      **Standard of Review**

¶ 56 In an appeal from the judgment of an administrative review proceeding, we review the decision of the administrative agency (here, the Board) and not the decision of the circuit court. *Orsa v. Police Board of City of Chicago*, 2016 IL App (1st) 121709, ¶ 47. "The applicable standard of review, which determines the degree of deference give to the agency's decision, depends upon whether the question presented is one of fact, on of law, or a mixed question of law and fact." *AFM Messenger Service, Inc. v. Dep't of Employment Security*, 198 Ill. 2d 380, 390 (2001). "An administrative agency's findings of fact are not reversed unless they are against the manifest weight of the evidence, and questions of law are reviewed *de novo*. [Citation.]" *Lyon*, 209 Ill. 2d 264 (2004). Agency decisions that present a mixed question of law and act are reviewed under a "clearly erroneous" standard, under which an agency decision "will be deemed 'clearly erroneous' only where the reviewing court, on the entire record, is 'left with the definite and firm conviction that a mistake has been committed.'" *AFM Messenger Service,* 198 Ill. 2d at 395. In this appeal, Burg

does not dispute any findings of fact. Whether the issues in this appeal are considered pure questions of law or mixed questions of law and fact, we find no error in the Board's decision.

¶ 57 **Whether the Timing of the Charges Violated Due Process**

¶ 58 We first address Burg's argument that his right to due process was violated by the "inexplicable delay" before charges were filed in January 2019, nearly ten years after the underlying incident and five years after the investigation was concluded. He cites the fourteenth amendment to the United States Constitution, as well as General Orders of the CPD, the CBA, and a prior decision by the Board in another matter. As discussed below, our case law does not support a due process violation in these circumstances, and the other authorities cited by Burg are unavailing.

¶ 59 "Procedural due process claims question the constitutionality of the procedures used to deny a person's life, liberty, or property." *Lyon*, 209 Ill. 2d at 273. " 'It is a well-established constitutional principle that every citizen has the right to pursue a trade, occupation, business or profession" which is a "property and liberty interest entitled to the protection of the law as guaranteed by the due process clauses of the Illinois and Federal constitutions." *Id*. (quoting *Coldwell Banker Residential Real Estate Services of Illinois, Inc. v. Clayton*, 105 Ill. 2d 389, 397 (1985)).

¶ 60 "While the core of due process is the right to notice and a meaningful opportunity to be heard, it is a flexible concept and requires only such procedural protections as fundamental principles of justice and the particular situation demand." *Chisem v. McCarthy,* 2014 IL App (1st) 132389, ¶ 14 (citing *Callahan v. Sledge,* 2012 IL App (4th) 110818, ¶ 27). "[D]ue process is a matter of federal constitutional law, so compliance or noncompliance with state procedural requirements is not determinative of whether minimum procedural due process standards have been met." *Lyon*, 209 Ill. 2d at 273. At the same time, state requirements "are a useful reference because they represent standards that the General Assembly and the [agency] concluded were sufficient." *Id*.

¶ 61    Burg relies on a number of sources as support for his claim that the Superintendent's delay in filing charges amounted to a due process violation. He notes that the CBA provides that, without specific written authorization by the Superintendent, "no complaint or allegation of any misconduct concerning any incident or event which occurred five (5) years prior to the date the complaint or allegation became known to the Department shall be made the subject of a Complaint Register investigation or be re-opened or re-investigated after five (5) years from the date the Complaint Register number was issued." Burg also relies heavily on General Order G08-01's directive that "prompt, thorough investigations will be conducted into allegations of misconduct." CPD General Order G08-01 (eff. June 7, 2017). He argues that the Superintendent's delay in charging him was not "prompt," as that term is used in that General Order.

¶ 62    Burg recognizes that our court's decisions in *Orsa* and *Chisem* rejected due process claims that were also premised on the untimeliness of Board charges against CPD officers. See *Orsa v. Police Board of the City of Chicago*, 2016 IL App (1st) 121709; *Chisem v. McCarthy,* 2014 IL App (1st) 132389. Yet, Burg claims those cases are distinguishable, because the delay in his case is "inexplicable." Burg instead argues that his circumstances are akin to those in a subsequent Board decision that found dismissal of charges warranted, *In the Matter of Charges Filed Against Sergeant John Poulos*, No. 17 PB 2932 (Feb. 28, 2018) ("*In re Poulos*.").

¶ 63    The Superintendent responds that Burg received the requisite notice and opportunity to be heard , and that *Orsa* and *Chisem* establish that the mere timing of charges does not give rise to a due process violation.

¶ 64    **Our Precedent in *Orsa* and *Chisem***

¶ 65    As both parties discuss *Orsa* and *Chisem,* we review them here. In *Chisem*, a police officer appealed from his suspension by the Board, citing the nearly three-year lapse between the

underlying incident in February 2009 and the filing of charges in December 2011. *Chisem*, 2014 IL App (1st) 132389, ¶¶ 1-3. Chisem claimed the "untimely" charges against him violated his right to due process. Id. ¶ 1. He also relied on CPD General Order 93-03 (effective April 15, 2011), the predecessor to General Order G08-01, which likewise called for a "prompt" investigation. *Id*. ¶¶ 14, 17.

¶ 66 In the course of finding that his right to due process was not violated, our court noted that Chisem relied on case law "involv[ing] a delay in the adjudication of allegations of misconduct after the respective plaintiffs had been suspended *** not a delay in the investigation leading to an initial suspension." *Id*. ¶ 15 (citing *Morgan v. Department of Financial & Professional Regulation*, 374 Ill. App. 3d 275, 303) (2007) and *Lyon*, 209 Ill. 2d at 282). The *Chisem* decision noted that, although the officer had a property interest in employment, he "was working as a paid CPD officer throughout the entire investigation and was only suspended after charges were officially filed." *Chisem*, 2014 IL App (1st) 132389, ¶15. Moreover, this court noted that Chisem was "immediately given notice of the pending investigation and a meaningful opportunity to be heard." *Id*. For these reasons, we found "no violation of [Chisem's] right to due process." *Id*.

¶ 67 *Chisem* separately rejected the officer's claim that the timing of the charges violated the CPD General Order:

> "We also observe no direct violation of General Order 93-03, which requires a prompt and thorough investigation. Although the investigation took a substantial amount of time, this directive does not set an absolute deadline within which investigations must be completed, but provides that if the investigation lasts more than 30 days, the investigator must seek and obtain an extension of time

within which to complete the investigation. [Citation.] The IPRA regularly sought and was granted extensions of time to complete its investigation. *** And even if a violation occurred, nothing in the directive suggests, and plaintiff provides no support, for the proposition that automatic dismissal is the sanction. [Citation.]" *Id.* ¶ 17.

¶ 68 Two years later, this court rejected virtually identical arguments in *Orsa v. Police Bd. of City of Chicago*, 2016 IL App (1st) 121709, which arose from an incident in which three off-duty officers assaulted a civilian. The Superintendent waited more than four years after the incident to bring charges; the Board ultimately discharged two officers and suspended the third. *Id.* ¶ 2. On administrative review, the circuit court held that the Board violated the officers' due process rights. *Id.* ¶ 34.

¶ 69 This court affirmed the Board's decision. As it had in *Chisem*, this court in *Orsa* rejected the officers' reliance on *Morgan* and *Lyon*, because those cases "involved a delay in the adjudication of allegations of misconduct after the plaintiffs had been suspended from employment, *not a delay in the investigation.*" (Emphasis added.) *Id.* ¶ 39. *Orsa* further noted that the officers "remained employed with the CPD throughout the investigation until charges were officially filed", they were "immediately given notice of the charges," and had a "meaningful opportunity to be heard during a five-day hearing before the Board." *Id.* For those reasons, we found that their "rights to due process were not violated." *Id.*

¶ 70 Our court in *Orsa* likewise rejected plaintiffs' reliance on General Order No. 93-03's requirement of a "prompt" investigation. *Id.* ¶ 42. We reasoned that "[a]lthough the investigation took a substantial amount of time", the General Order did not "set an absolute deadline" and the "IPRA

regularly sought and received extensions of time to complete its investigation." *Id*. We also noted that "even if a violation [of General Order 93-03] occurred, nothing in the directive suggests and plaintiffs provide no support, for automatic dismissal." *Id*. Notably, the analysis in both *Chisem* and *Orsa* indicated that the question of whether due process was violated was wholly *separate* from whether there had been a violation of General Order 93-03's requirement of a "prompt" investigation. That is, both decisions concluded that there was no due process violation, *before* separately addressing whether General Order 93-03 was violated.

¶ 71 **The Timing of the Charges Against Burg Did Not Constitute a Due Process Violation**

¶ 72 To the extent that Burg argues his due process rights were violated by the timing of the charges, we agree with the Superintendent that *Chisem* and *Orsa* are on point. Those cases illustrate that, in contrast to a delayed *adjudication* after an employee has been suspended, a lengthy delay before *charges* does not establish a due process violation, at least where the employee continued to be paid. See *Chisem*, 2014 IL App (1st) 132389, ¶ 15 ("plaintiff was working as a paid CPD officer through the entire investigation and was only suspended after charges were officially filed."); *Orsa*, 2016 IL App (1st) 121709, ¶39 ("While we agree that plaintiffs have a property interest in their employment, they remained employed with the CPD through the investigation until charges were officially filed."). Likewise, Burg was not deprived of any property interest by the delay in the filing of charges. There is no dispute that from the time of the incident until charges were filed, he remained a CPD employee and received regular compensation, including disability benefits following his 2014 injury.

¶ 73 More fundamentally, we keep in mind that "the core of due process is the right to notice and a meaningful opportunity to be heard." *Chisem,* 2014 IL App (1st) 132389, ¶ 14. Burg has not suggested that he was not timely notified of the charges once they were filed. Further, the record

reflects that he had a meaningful opportunity to be heard at the hearing before the Board, where he was represented by counsel.

¶ 74    *In re Poulos* **Does Not Support Burg's Due Process Claim**

¶ 75    In the course of his due process argument, Burg relies on a 2018 Board decision that dismissed charges against an officer as untimely. *In re Poulos*, No. 17 PB 2932 (Feb. 28, 2018).[9] Burg claims *Poulos* is more factually analogous to his situation than *Chisem* and *Orsa*. However, a close reading of *Poulos* shows that it was not decided on due process grounds but was limited to General Order G08-01. Moreover, the facts of *Poulos* are also distinguishable. We proceed to discuss both *Poulos* and General Order G08-01.

¶ 76    In *Poulos*, the Superintendent charged Sergeant John Poulos in June 2017 with CPD rule violations that allegedly occurred many years earlier. Specifically, Poulos allegedly failed to disclose certain facts on his application become a police officer in 2000, and between July 2003 and September 2006 he allegedly violated a CPD rule by holding an ownership interest in a restaurant with a liquor license. *Poulos*, 17 PB 2932 at 2. The investigation into the charges and disciplinary recommendation was completed in 2007. *Id.* In June 2010, Poulos returned to work after an injury-related leave of absence. Nevertheless, he was not charged until seven years later.

¶ 77    Poulos moved to dismiss the charges based on their untimeliness. When the Board inquired about the reason for the delay, the Superintendent could not provide an explanation, but suggested that "numerous administration and staffing changes" had contributed. *Id.* at 3.

¶ 78    Although Poulos asserted a number of bases for dismissal, including a due process claim, the Board granted his motion solely on the basis of General Order G08-01. In addition to citing its requirement of "[p]rompt, thorough investigations," the Board recited General Order G08-01's

---

[9] The decision is available at https://www.chicago.gov/content/dam/city/depts/cpb/PoliceDiscipline/17PB2932.pdf

language that " 'the Superintendent must ensure that internal investigations are conducted consistent with the provisions outlined in this directive to provide Department members with the *fundamental principles of fairness* and to ensure that members are afforded all their rights.' " *Id*. at 4. (Emphasis added by Board).

¶ 79 The Board found that the "lengthy and unexplained delay in filing charges against Sergeant Poulos violates these important provisions of General Order G08-01, and warrants dismissal of these charges with prejudice." *Id*. The Board expressly found that Poulos' situation was distinct from *Orsa* and *Chisem*, because in those cases "there was no lengthy delay between the completion of the investigation and the filing of charges." *Id*. The Board recognized that lengthy investigations may be necessary in a complex case and that it had "not dismissed charges in cases where investigations have taken several years." *Id*. at 5. However, in Poulos' case, "the delay took part in the Superintendent's office, long after the investigation was complete." *Id*.

¶ 80 The Board also pointed out that the charges against Poulos "turned largely on documentary evidence" and "should have been resolved promptly." *Id*. Thus, *Poulos* was "quite different than excessive-force cases and other cases that involve multiple and conflicting accounts by lay and law enforcement witnesses, companion criminal and civil litigation, and the need for expert evidence." *Id*. The Board also emphasized that the Superintendent "offered no reasonable explanation" for the ten-year delay between the end of the investigation and the filing of charges in 2017.

¶ 81 Citing *Orsa* and *Chisem*, the Board's *In re Poulos* decision reiterated that General Order G08-01 does *not* set an absolute deadline for the filing of charges, nor does it require automatic dismissal for its violation. *Id*. at 6. The Board explained that, unlike a statute of limitations, "General Order G08-01 is far more flexible and requires a careful balancing between the interests of a prompt

investigation and a thorough investigation." *Id*. at 6. The Board further cautioned that the General Order "should only be invoked as a basis for dismissal in the most extraordinary and egregious cases, like the present one." *Id*. The Board thus dismissed the charges against Poulos solely under General Order G08-01. *Id*. at 6 n. 4.

¶ 82    As *Poulos* did not discuss whether due process was violated, it provides no support for Burg's due process argument. Nevertheless, as Burg also relied on General Order G08-01 in his arguments to the Board and on appeal, we proceed to discuss why that General Order is also unavailing.

¶ 83    **General Order G08-01 Did Not Warrant Dismissal of the Charges**

¶ 84    We again point out that although Burg's brief discusses General Order G08-01 as part of his due process argument, *Chisem* and *Orsa* illustrate that the due process inquiry is separate from the question of whether the General Order was violated. In any event, we conclude that General Order G08-01 did not entitle Burg to dismissal of the charges. We reach this conclusion for several reasons.

¶ 85    First, Burg relies on the portion of the General Order that provides for "prompt" investigations. However, the crux of Burg's appeal is not about the timing of the *investigation*, which the record reflects was initiated in 2010 and completed in 2014. Rather, all of his arguments stem from the timing of the *charges* filed in January 2019, nearly five years after the investigation had completed, and more than eight years after the underlying 2010 incident. Burg simply does not identify any specific language in the General Order that purports to set any requirement for when charges must be filed. This is consistent with our decisions in *Orsa* and *Chisem*, which found no violation of the same "prompt" investigation requirement in General Order 93-03, the predecessor to General Order G08-01. *Orsa*, 2016 IL App (1st) 121709, ¶ 42; *Chisem*, 2014 IL App (1st) 132389, ¶ 17.

¶ 86    We recognize that in *Poulos*, 17 PB 2932, the Board found dismissal appropriate under General Order G08-01, where the charges were filed nearly 17 years after the earliest alleged CPD rule violation, and a decade after the investigation had concluded. However, we find *Poulos* distinguishable from Burg's situation, especially given the Board's comments in *Poulos* explaining the uniqueness of that decision. Significantly, that decision emphasized that the charges against Poulos "turned largely on documentary evidence" rather than witness testimony, so that the case was "quite different than excessive force cases and other cases that involve multiple and conflicting accounts by lay and law enforcement witnesses" and "companion criminal and civil litigation." 17 PB 2932 at 5. In stark contrast to those circumstances, the charges against Burg essentially turned on conflicting witness testimony regarding Burg's actions. Further, unlike *Poulos*, the underlying incident gave rise to companion civil litigation, in which Burg was a named defendant.

¶ 87    Moreover, *Poulos* emphasized that "the particular facts of each case must be considered" in deciding whether General Order G08-01 has been violated, and that even a violation does not automatically warrant dismissal of charges. *Id*. at 6; see also *In re John Haleas,* 14 PB 2848, at 5 (Aug. 21, 2014) (recognizing there is no provision in General Order G08-01 order "requiring the extraordinary remedy of dismissal of the case as a sanction" for its violation). That is, General Order G08-01 "should only be invoked as a basis for dismissal in the most extraordinary and egregious cases." *Poulos*, 17 PB 2932 at 6. This is consistent with our recognition in *Orsa* and *Chisem* that nothing in General Order G08-01's predecessor (General Order 93-03) suggested that its violation would call for automatic dismissal of charges. *Orsa*, 2016 IL App (1st) 121709, ¶ 42; *Chisem*, 2014 IL App (1st) 132389, ¶ 17. Thus, even if we were to conclude that the timing of Burg's charges violated General Order G08-01's requirement of a "prompt and thorough investigation" (which we do not), that violation would not require dismissal.

¶ 88　For the foregoing reasons, we cannot say that the Board erred in declining to find that dismissal was warranted under General Order G08-01.

¶ 89　**Burg's Reliance on the CBA Is Unavailing**

¶ 90　We briefly address Burg's reliance on language of the CBA for his due process challenge. In particular, Burg notes the provision in section 6.1 of the CBA that:

> "Unless the Superintendent of Police specifically authorizes in writing, no complaint or allegation of misconduct concerning any incident or event which occurred five (5) years prior to the date the complaint or allegation became known to the Department shall be made the subject of a Complaint Register investigation or be re-opened or re-investigated after five (5) years from the date the Complaint Register number was issued." [10]

¶ 91　Burg's reliance on the CBA is misplaced. First, as the circuit court recognized, Burg did not reference the CBA in support of his motion to dismiss before the Board. Thus, he has forfeited reliance on it. "[O]n administrative review a party forfeits any issue that it failed to raise in proceedings before the administrative agency." *Demesa v. Adams*, 2013 IL App (1st) 122608, ¶ 52; see also *Cinkus v. Village of Stickney Municipal Officers Electoral Bd.,* 228 Ill. 2d 200, 212 (2008) "[I]f an argument, issue, or defense is not presented in an administrative hearing, it is procedurally defaulted and may not be raised for the first time before the circuit court on administrative review.").

---

[10] The CBA is available at
https://www.chicago.gov/content/dam/city/depts/dol/Collective%20Bargaining%20Agreement3/FOPCBA2012-2017_2.20.15.pdf

¶ 92 Moreover, even if we disregarded the forfeiture, the referenced CBA provision does not support Burg's position. Contrary to Burg's suggestion, it does not impose a time limit in which to bring charges after an alleged incident misconduct. Rather, it provides that an incident of alleged misconduct that is over five years old will not "be made the subject of a Complaint Register investigation", absent specific authorization from the Superintendent. That is, it concerns the time period in which an investigation must be initiated. It does not suggest any violation premised on when charges are filed.

¶ 93 **Burg Has Not Identified the Requisite Prejudice for *Laches***

¶ 94 We have thus rejected Burg's due process challenge, along with his reliance on General Order G08-01 and the CBA. This brings us to Burg's alternative contention, that the untimeliness of the charges warranted their dismissal under the doctrine of *laches*. For the following reasons, we conclude that—notwithstanding the troubling delay in the filing of charges—Burg did not show the requisite resulting prejudice to support *laches.* Accordingly, the Board did not err in rejecting that defense.

¶ 95 Our supreme court has explained that "*[l]aches* is an equitable defense asserted against a party 'who has knowingly slept upon his rights and acquiesced for a great length of time, [citation] and its existence depends on whether, under all circumstances of a particular case, a plaintiff is chargeable with want of due diligence in failing to institute proceedings before he did.' " *Tillman v. Pritzker*, 2021 IL 126387, ¶ 25 (quoting *Pyle v. Ferrell*, 12 Ill. 2d 547, 552 (1958)). "The doctrine is grounded in the equitable notion that courts are reluctant to come to the aid of a party who has knowingly slept on his rights to the detriment of the opposing party." *Id*. (quoting *Tully v. State,* 143 Ill. 2d 425, 432 (1991)).

¶ 96    "*Laches* is an affirmative defense that is unrelated to the merits of the suit." *PNC Bank, National Ass'n v. Kusmierz*, 2022 IL 126606, ¶ 28. Accordingly, "[t]he party asserting *laches* bears the burden of establishing the defense by a preponderance of the evidence. [Citation.]" *Id.* ¶ 26. "Two elements must be established for *laches* to successfully defeat a claim: (1) lack of diligence by the party asserting the claim, and (2) prejudice to the opposing party resulting from the delay. [Citation.]" *Id.* Absent prejudice, a "mere lapse in time" is insufficient to support a *laches* defense. *Chisem*, 2014 IL App (1st) 132389, ¶ 18.

¶ 97    Furthermore, "as a general rule, the doctrine of *laches* does not apply to governmental entities absent extraordinary circumstances because *laches* could impair the functioning of the government." *Orsa*, 2016 Il App (1st) 121709, ¶44; *Chisem*, 2014 IL App (1st) 132389, ¶ 18 (same). Our supreme court has recognized there is "considerable reluctance to impose the doctrine of *laches* to the actions of public entities unless unusual or extraordinary circumstances are shown." *Van Milligan v. Board of Fire and Police Com'rs of Village of Glenview*, 158 Ill. 2d 85, 90 (1994).

¶ 98    "The decision with respect to whether *laches* should be invoked is generally a discretionary matter." *Chisem,* 2014 IL App (1st) 132389, ¶ 18 (citing *Van Milligan,* 158 Ill. 2d at 91). We will not disturb the Board's determination regarding *laches* unless it was "so clearly wrong as to constitute an abuse of discretion." *Orsa,* 2016 IL App (1st) 121709, ¶ 44; *Chisem,* 2014 IL App (1st) 132389, ¶ 18.

¶ 99    In denying Burg's motion to dismiss, the Board found *laches* inapplicable because Burg did not demonstrate that the Superintendent's delay in bringing charges caused him the requisite prejudice. In arguing for reversal, Burg initially suggests that prejudice may be presumed due to the length of the delay in his case. However, the case law simply does not support that proposition. To the

contrary, our precedent is clear that the mere passage of time is insufficient. *Laches* requires actual prejudice "resulting from the delay." *Kusmierz*, 2022 IL 126606, ¶ 26; see also *Pyle v. Ferrell*, 12 Ill. 2d at 552 (1958) (laches is "neglect or omission to assert a right, taken in conjunction with a lapse of time *** and other circumstances causing prejudice to an adverse party.") (emphasis added.). "If the defendant is not injured by the delay, laches is inapplicable." (Internal quotation marks omitted.) *LaSalle National Bank v. Dubin Residential Communities Corp*, 337 Ill. App. 3d 345, 351 (2003).

¶ 100 Burg otherwise argues that De La Rosa's death before the charges were filed caused him prejudice, as Burg lost the ability to cross-examine him at the evidentiary hearing. Burg asserts that De La Rosa was a "key witness" upon which the Board's decision relied.

¶ 101 We recognize that De La Rosa was one of the only identified eyewitnesses to the incident. His recollection was undoubtedly important, since he was impartial and he observed events before, during, and immediately after the altercation. However, De La Rosa provided detailed testimony about the events in question at his civil deposition in the civil litigation brought by Rzany and Cordero. Importantly, there is no dispute that De La Rosa was subject to cross-examination by the attorney who represented Burg and the other defendants.

¶ 102 De La Rosa's prior testimony, at which Burg's counsel had a fair opportunity to cross-examine him regarding the pertinent events, weighs against a finding of prejudice resulting from that witness's unavailability at the evidentiary hearing. Notably, while Burg claims that he was deprived of the opportunity to question De La Rosa about "pertinent facts", Burg does not specify any particular relevant topics that were not covered at De La Rosa's civil deposition. Nor does Burg suggest any reason why, had De La Rosa been available at the hearing, he would add any new pertinent information or qualify his prior sworn testimony. Indeed, it is speculative to suggest

that De La Rosa's recollection of the night in question would be substantially different (or more favorable to Burg) at a new proceeding. This is particularly true where De La Rosa's deposition testimony merely corroborated Rzany's. Unlike Burg's testimony, which the Board found to be inconsistent, vague, and contradictory, Rzany's was supported by De La Rosa's testimony, a 911 tape, and the recording of the police dispatch. There is no basis in the record for us to depart from the Board's conclusion that Burg offered no credible argument as to how he was prejudiced by being deprived of another opportunity to question De La Rosa, particularly where his testimony was in line with the only other material witness's testimony and the other evidence. Thus, we do not find any prejudice to Burg's case resulting from De La Rosa's absence.

¶ 103    Burg otherwise claims that he was prejudiced by the delay because he "lost the chance to develop evidence, such as additional eyewitnesses to refute the allegations" against him. He states he had no reason to do, once the civil litigation was settled. He suggests that had the charges been filed earlier, he could have discovered evidence that has since "eroded."

¶ 104    However, these claims are likewise speculative. Burg offers no specific reason to believe that there were any unidentified witnesses to the underlying incident, or additional evidence that could have been discovered. Burg has not presented any reason to conclude that he could have found any additional evidence to overcome De La Rosa's prior testimony, Rzany's testimony, and all of the corroborating evidence. Speculative assertions are insufficient to show the requisite prejudice supporting a laches defense. We thus agree with the Board that Burg did not show the requisite prejudice to support the application of *laches*.

¶ 105    Moreover, we do not find that the mere length of the delay before the charges gives rise to the "compelling" or "unusual or extraordinary circumstances" required to apply laches against a

governmental entity. *Van Milligan*, 158 Ill. 2d at 90-91. Thus, we cannot say that the Board abused its discretion in rejecting his reliance on the *laches* doctrine.

¶ 106 We thus find that none of Burg's challenges have legal merit. Before we conclude, however, we emphasize that our decision should not be read to condone the administrative delay in this case. There is no apparent reason (other than administrative oversight or negligence) why charges were not filed against Burg until January 2019, more than four years after the investigation was concluded and more than eight years after the underlying 2010 incident. Indeed, the Board's decision found the delay was "unconscionable." Nevertheless, there is apparently no administrative rule or statute specifying a deadline for the Superintendent to bring charges for such misconduct, and it is not our role to create one. As discussed, our case law does not support a finding of a due process violation or *laches* under these circumstances.

¶ 107 In summary, we conclude that the Board did not err in denying Burg's motion to dismiss the charges against him.

¶ 108                                    CONCLUSION

¶ 109 For the foregoing reasons, we affirm the decision of the Board and the judgment of the circuit court of Cook County.

¶ 110 Affirmed.